ELIADA CRAMPTON *v.* Administrator of HENRY BALLARD.

RUTLAND,
January,
1838.

Held, that if one receive money and promise to pay it over to a third person, such third person may sustain an action to recover the money.

If the contract also contain a promise of indemnity to two others, liable for the same thing, in different relations, and who do not pay money out of any joint fund, their right of action, if any, is several and not joint.

But a person collaterally interested in a contract, where another is principally interested and is the occasion of the consideration, and the party with whom the contract is made, cannot sustain an action upon such contract.

*Dubitatur*, whether money received under a legal obligation to repay the same with interest, forms any legal consideration for a promise beyond that.

THIS was an action of assumpsit, on a written contract made by defendant's intestate with William Vaughan & son, in consideration of $300, received of said Vaughans, "to pay " that amount to the indorsee of a note that William Vaughan " & son owe Edward Dyer, now in suit against Eliada " Crampton, and I also agree to and with William Vaughan " & son, to indemnify Elias Salisbury and Eliada Crampton " against all harm and damages, that have arisen, and also, " whatever shall arise hereafter, in point of damages to be " paid to the said Edward Dyer." The note mentioned in said contract was signed by Rathbone & Vaughan, as principal and said Salisbury as surety. Vaughan & son were the successors in business of Rathbone & Vaughan and assumed the payment of all the debts of the latter.

The plaintiff was constable of Tinmouth, and, as such, had attached certain goods and chattels, as the property of William Vaughan, on a writ upon said note in favor of Dyer against said Rathbone & Vaughan and Salisbury, and had left the property, so attached, in the possession of Vaughan & son. Dyer obtained a judgment in his suit, took out execution thereon and duly demanded the property so attached, which had, in the mean time, been disposed of by Vaughan & Son. Dyer then brought a suit against Crampton, on the liability of the latter as constable, and pending this suit the contract in question was executed. The suit mentioned in the contract was the suit so pending against Crampton.

Dyer recovered judgment against Crampton, and the latter, after having unsuccessfully endeavored to set aside said judgment, by a writ of *audita querela*, paid the amount of an execution issued thereon.

Rutland,
January,
1838.

Crampton
v.
Admr. of Bal-
lard.

Crampton afterwards commenced a suit upon said contract against Ballard, the defendants' intestate, and, pending said suit, Ballard died, and, upon the representation of the insolvency of his estate, said suit was discontinued.

Upon the foregoing facts, the county court decided that the plaintiff was entitled to recover of the estate of the intestate the amount paid to Dyer on said execution, and for his trouble and expenses in and about said *audita querela*, and the costs of said suit so discontinued as aforesaid, amounting in the whole to $449,50—To which decision the defendant excepted.

*Merrill & Ormsbee,* for defendant.

The construction to be given to this contract is, that the supplement, so to speak, of the contract, to wit, the "also "agree to and with William Vaughan & Son, to indemnify "Elias Salisbury and Eliada Crampton against all harm and "damages that have arisen, and also whatever shall arise "hereafter, in point of damages to be paid to the said Ed- "ward Dyer," relates entirely to the three hundred dollars.

1. There is no consideration for extending the liability of Ballard farther than the three hundred dollars. To adopt any other construction would be to suppose that Ballard assumed this liability without consideration, and in fact without reason or motive.

2. The contract, whatever it was, was made with William Vaughan & Son, and must be enforced, if at all, in their name.

*P. Smith,* for plaintiff.

The contract contains a clear and distinct promise, on the part of the intestate, to indemnify Crampton against the suit then pending against him. It is true that the promise is to William Vaughan & Son, but as Crampton was the person to be benefitted, and the promise was to be performed to him, he may sustain the action in his own name. 1 Chitty Pl. 4. *Shaw* v. *Sherwood,* Cro. Eliz. 729. *Martin* v. *Hind,* 2 Cowp. 437. *Company of Feltmakers* v. *Davis,* 1 Bos. & Pull. 98. *Marchington* v. *Vernon,* do. 101, note c. *Pigott* v. *Thompson,* 3 do. 149. *Dutton & Wife* v. *Poole,* 1 Vent. R. 318.

The interest of Crampton and Salisbury is several, and, therefore, the former may sue alone, though the promise is

in terms joint. 1 Chitty Pl. 6. 1 Saund. 153, note 1. The consideration of the promise was the three hundred dollars, specified in the writing.

RUTLAND,
January,
1838.

Crampton
v.
Admr. of Bal-
lard.

The opinion of the Court was delivered by

REDFIELD, J.—In this case, the defendant acknowledges the receipt of $300,00, which he promises to pay over to the indorsers of the note to Dyer, i. e. to plaintiff, and Salisbury as it is agreed, and in addition to this, he promises to indemnify, and save them harmless from all loss, cost or damage in the premises.

There is no controversy about the three hundred dollars. That has been paid according to the contract. But it is contended, that so far as the contract was special, i. e. extended beyond the simple payment of the money, no action could be sustained in the name of the plaintiff, and the court are of that opinion.

The three hundred dollars, which seems to form the only consideration of the intestate's promise, was received of Vaughan & Son. They were the principals in the contract to Dyer. That was a liquidated, and not an uncertain or contested claim, and there is no pretence that the intestate assumed the debt of Vaughan & Son to Dyer absolutely. He only agreed to indemnify Salisbury and plaintiff, and, as a natural consequence perhaps, agreed to pay whatever they should be compelled to pay.

But there is nothing in the case, showing that plaintiff and Salisbury agreed to look to the intestate for their indemnity or that they were made acquainted with the intestate's contract. It was a contract in some sense, for their benefit, but one in which they had not, by any means, the only, or perhaps the principal interest. It was made without their privity, and not in their names, but in the name of another, and one who had the *principal*, and they only a *secondary* interest. Under these circumstances, we think that the suit cannot be sustained in the name of this plaintiff.

He cannot claim that Vaughan & Son acted as his agents in making the contract, for they were themselves ultimately interested in the contract. And no case can be found in the books, where the consideration moves from a person principally interested in a contract, and the contract is made with such person, that one *collaterally* interested can sue in his

RUTLAND,
January,
1838.

Crampton,
v.
Admr. of
Ballard.

own name. This would involve the absurdity, that either of two distinct parties, at the same time, could sustain an action upon the same contract, and recover for the same identical thing. For it will not be supposed that Vaughan & Son, in making this contract of indemnity with the intestate, would leave to mere chance, whether themselves or he, should be called upon by plaintiff and Salisbury for the indemnity, unless they expected, if plaintiff called upon them, that they might call upon the intestate. This must have been the understanding of the latter. Of course, they stood principally interested in the contract, and plaintiff only collaterally. Had plaintiff and Salisbury agreed to look exclusively to the intestate for their indemnity, or had he assumed the entire liability of Vaughan & Son, the case might merit a very different consideration.

Those cases in which a party, with whom the contract was not made, has been permitted to sustain an action upon it, are referable to the heads of " dormant partners," " agents known or secret," and where the consideration moves from the party, and he is solely interested in the fulfilment of the contract. 13 Petersdorff, 129, et seq.

The objection, that the suit should have been in the name of plaintiff and Salisbury, has not labored with the court. Had the contract been made exclusively for *their* indemnity, we think it should be understood as made to them severally, unless they were jointly liable to the payment of the money, *in the same relation*, and paid the money out of *joint funds*, which is not pretended to be the case here. The plaintiff and Salisbury were liable, one by *personal contract*, the other for *official neglect*, and no money has been paid by them, out of any joint property. We think, in accordance with all the decided cases on this subject, each may bring a suit for the amount paid by him, against the persons liable to them or either of them. 1 Saunders' Reports, 154, and notes.

How far the receipt of money, with an absolute promise to pay it over, without any time named, which in construction of law signifies *immediately*, and makes the defendant liable for interest, the whole time he retains it, may form the consideration for a promise beyond the refunding of

the money, and interest, may admit of serious doubt. It is difficult to perceive any legal consideration to the smallest amount. But this we do not decide.

Judgment reversed.