Phelps et al. v. Conant et al.

· PHELPS, DODGE & CO. v. C. B. CONANT & CO.

*Exceptions. Variance between specifications and proof, and when objection should be made thereto. Fraud. Assumpsit for money had and received. Evidence.*

The presiding judge of the county court has no authority to amend a bill o exceptions after his term of office has expired.

In an action of general assumpsit, where a specification has been filed, and the plaintiff's testimony has been received without objection at the time it was offered, the defendant will not be allowed, after the plaintiff has closed his testimony, to object on the ground of variance between the specification and the proof, if the claim proved is substantially of the character described in the specification.

If A falsely and fraudulently represent to B that C is solvent, and B, relying on such representations, sell property to C, who is also a party to the fraud, and the property afterwards passes from C's into A's hands, and is converted by the latter into money, A will be liable to B in an action for money had and received.

If A receive property from C, and in consideration thereof, promise C to convert it into money, and to pay a part of the proceeds to B, the latter may, after A has converted the property into money, maintain assumpsit for money had and received against A for the sum stipulate to be paid him.

If B claim that A has promised to pay B's debt against C, the fact, that A has also under similar or identical circumstances promised another person to pay his debt against C, has no legal tendency to prove B's claim, and is not admissible in evidence for that purpose.

In an action of general assumpsit, in which the plaintiff claimed that the defendant was liable because he had by false representations induced the plaintiff to sell goods to another person, with a view to get them into his own possession and to convert them into money, which he subsequently did, *Held*, that certain propositions in the charge of the court to the jury were objectionable, in not instructing them that, in order to render a verdict for the plaintiff, they must find both a fraudulent purpose and a conversion of the property to money on the part of the defendant.

ASSUMPSIT upon the common counts. The plaintiffs filed a specification setting forth two notes in favor of the plaintiffs against William Wheeler & Co., and payable at the office of the defendants, upon which judgments had been rendered against Wheeler & Co., and claimed to recover the amounts due thereon at the date of the transfer from Wheeler & Co. to the defendants of their real

estate, etc., as set forth below. Plea, the general issue and trial by jury at the March Term, 1857,—KITTREDGE, J., presiding.

The plaintiffs introduced evidence tending to show that, during the time of the transaction in question, they were dealers in metals in the city of New York, and that the defendants were commission merchants in New York, dealing in manufactured metallic wares ; that William Wheeler was a manufacturer of metallic candlesticks in Poultney; Vermont, having, during a part of the time, from April 1, 1852 to January 1, 1854, J. W. Smith and F. C. Smith as partners in said business, under the name of William Wheeler & Co., and that after January 1, 1854, the business was transacted in the name of J. W. Smith ; that in December, 1851, Wheeler entered into a written contract with the defendants, by which the latter became his agents in New York, for the sale on commission of all his manufactured wares, and agreed to make him advances from time to time in cash, in acceptances of his drafts, and in the purchase of stock and materials for his business in Poultney; that the contract was continued after the Smiths entered the firm until September, 1854, when the attachment and sale of Wheeler & Co.'s property, hereafter mentioned took place ; that the defendants, from time to time accepted and paid the drafts of Wheeler and Wheeler & Co. until December, 1853, when they refused to accept two drafts drawn by Wheeler & Co. on them in favor of the plaintiffs for the same bill of goods for which the plaintiffs claimed to recover in this suit ; and that at the time of this refusal the defendants were in advance to Wheeler & Co. for more than five thousand dollars.

The plaintiffs' testimony further tended to show that in the spring of 1852, it was proposed and arranged between the defendants and Wheeler & Co. that the latter should purchase materials of the plaintiffs, and that Wheeler & Co. did accordingly, at the instance of the defendants, purchase of the plaintiffs, to whom they were then strangers, three bills of goods, the first of which was paid in cash, and the two others by drafts of Wheeler & Co. on the defendants to the amount of about sixteen hundred dollars, which drafts were accepted and paid by the defendants ; that when said account and dealing commenced it was agreed between Wheeler and the plaintiffs that the stock he should purchase of them should be had on a credit of six months, and should be paid for by the defendants'

acceptances, as often as the account should amount to five hundred dollars; that there was an understanding between Wheeler and the defendants, that the latter should accept for the bills of goods purchased by Wheeler & Co. of the plaintiffs, and that Wheeler made that proposition to the plaintiffs as to the mode of payment on the strength of such understanding.

The plaintiffs' testimony also tended to show that in February, 1853, Wheeler & Co., at the suggestion of the defendants, made larger purchases than previously of the plaintiffs, and that when the bills for said purchases became due, Wheeler & Co. sent to the plaintiffs two drafts for the amount thereof on the defendants, which the defendants, after some delay, refused to accept; that the plaintiffs afterwards took the notes of Wheeler & Co. for the amount of these drafts, which notes are the same set forth in the plaintiffs' specification, and are still unpaid; that at the time when Wheeler & Co. made these last purchases of the plaintiffs, they were insolvent, which fact was known to the defendants; that the defendants, in the course of the time while they were dealing with Wheeler, told the plaintiffs that Wheeler & Co. were good and doing a good and improving business, but did not at any time disclose to the plaintiffs any facts within their knowledge to the contrary, nor inform them that they should accept no more drafts for stock purchased by Wheeler & Co.; that the plaintiffs sold Wheeler & Co. the unpaid bills of goods, relying upon the defendants' representations as to Wheeler & Co.'s responsibility, and upon the arrangement previously communicated to them by Wheeler, and carried out by the defendants before that time, as to payment by the defendants' acceptances; that the stock so sold was manufactured by Wheeler & Co., and passed into the defendants' hands, and was by them converted into money, and that the proceeds of the sales thereof were sufficient to pay the plaintiffs' claim; that the defendants knew that Wheeler & Co. had agreed with the plaintiffs to pay for their purchases in the defendants' acceptances, and had represented to them that the defendants had agreed to accept their drafts, and that the plaintiffs relied on such representations, and the defendants did not deny the truth of the same, but there was no personal intercourse upon the subject between the plaintiffs and the defendants during the purchase of the goods, except as above stated.

Phelps et al. *v.* Conant et al.

The plaintiffs' testimony also tended to show that by their deeds, dated in December, 1853 and February, 1854, Wheeler & Co. conveyed to the defendants all their real estate to secure the payment of their indebtedness to them ; that in September, 1854, an arrangement was made between the defendants and Wheeler & Co., that an attachment should be made of all the remaining property of the latter, in favor of the defendants, and the property should be sold upon execution at a nominal price to the defendants, for the purpose of avoiding interruption by other creditors, and that the defendants should account to Wheeler & Co. for such property at its real value, and should pay from its proceeds the plaintiffs' debt, and also a debt to the Scoville Manufacturing Company, and a debt to Wallace & Sons, and that under this agreement the property was attached and sold on execution and bought by the defendants at much less than its value, and was subsequently converted into money by them to an amount exceeding the plaintiffs' claim ; and that at the time of such sale the defendants renewed their agreement to pay the plaintiffs' debt out of the proceeds of the sale, which however they had never done.

Among other evidence to prove the agreement last above stated, the plaintiffs offered as a witness, Thomas Wallace, of the firm of Wallace & Sons, and offered to prove by him that in June, 1854, his firm sold to Smith a quantity of brass with a similar agreement in regard to the payment therefor, by the defendants' acceptances, as that testified to in regard to the sale by the plaintiffs and that he was present at the time of the sale of Wheeler & Co.'s property on execution to the defendants, and informed the defendants of the circumstances under which he had sold the brass to Smith, and that thereupon the defendants promised the witness that they would pay said debt.  To the admission of this testimony the defendants objected, but the court admitted it, and the witness testified as above.

The plaintiffs having closed their testimony, the defendants' counsel asked the court to rule that the plaintiffs could not recover under their declaration and specification.  The court declined so to rule, and ordered the cause to proceed.

The defendants then put in their testimony which tended to contradict the material points which the plaintiffs' testimony tended to prove.

The plaintiffs claimed to be entitled to recover upon two grounds : first, for the reason that the goods had been obtained from them by fraudulent acts, representations and concealments of the defendants, and had then passed into the defendants' hands from Wheeler & Co., and had been converted into money ; that this was in pursuance of a fraudulent design and purpose entertained by the defendants throughout the whole transaction; second, upon the promise made by the defendants to Wheeler & Co., at the time of the sale of the property on execution, to pay the plaintiffs' debt out of the proceeds of the property, as a part of the consideration for so receiving it, upon which promise, as the property had been converted into money by the defendants, the plaintiffs claimed to be entitled to recover their debt in this action.

The court charged the jury, first, that if they found from the evidence that the defendants represented to the plaintiffs that Wheeler & Co. were responsible, when in fact they knew or had reason to know that they were insolvent, and that the plaintiffs sold the goods to Wheeler & Co. on the strength of such representations, and that these goods afterwards passed into the defendants' hands and were by them converted into money, the plaintiffs would be entitled to recover.

Second, if the jury found from the evidence that the defendants, knowing Wheeler & Co. to be insolvent, authorized Wheeler to say to the plaintiffs, or to give them to understand, that their bills for goods sold to Wheeler & Co. would be paid by the defendants' acceptances, and that the plaintiffs sold Wheeler & Co.'s goods on the strength of such assurance, and that such goods afterwards passed into the defendants' hands and were sold by them, the plaintiffs would also be entitled to recover.

Third, if the jury found that Wheeler gave such assurrance, without authority from the defendants, and that the defendants knew that Wheeler & Co. were insolvent and had given such unauthorized assurance, and that the plaintiffs, relying on it, had sold the goods, and that such goods afterwards passed into the defendants' hands and were sold by them, the plaintiffs would also be entitled to recover.

Fourth, if the jury found that at the time of the negotiations and arrangements relating to the attachment and sale of Wheeler

& Co's property to the defendants on execution, it was agreed as part of the consideration of such sale between Wheeler & Co. and the defendants, that the latter should pay the plaintiffs' debt out of the proceeds of the property, and that the property passed by such sale into the defendants' hands, and was by them converted into money, the plaintiffs would also be entitled to recover; and also that the circumstance disclosed by the testimony of Wallace was one which the jury were authorized to consider as affording a probability that the defendants had agreed to pay the plaintiffs' debt, as well as that of Wallace & Sons, and the Scoville Manufacturing Company, as Wheeler had testified. The jury returned a verdict for the plaintiffs for the amount of their claim and interest.

To the several rulings and decisions of the court, that the action could be maintained if the jury found the facts to be as claimed by the plaintiffs; and to the charge of the court in this respect, and to the admission of the testimony of Wallace, the defendants excepted.

The bill of exceptions originally signed by the presiding judge, at the trial, and filed, set forth the case as it is above stated. Afterwards, and after the term of office of the presiding judge had terminated, he made certain alterations and amendments to the bill of exceptions, the particulars of which, under the decision of the court, are immaterial. The defendants claimed in the supreme court that the presiding judge had no authority to make the amendments at the time they were made, and that therefore they could not be entertained.

*Daniel Roberts* and *Charles L. Williams*, for the defendants.

*Linsley & Prout* and *E. J. Phelps*, for the plaintiffs.

The opinion of the court was delivered by

REDFIELD, Ch. J. I. The first question is, whether the presiding judge of the county court, after his term of office expires, can be allowed to possess any authority to amend the bill of exceptions. We think it can not be admitted that he possesses any such authority. The statute vests the presiding judge with the power of the court, in allowing and placing exceptions upon the record. And from this he has been allowed an incidental power to amend the exceptions according to the facts, up to the time of trial in this

court. The practice is a loose one, and attended often with embarrassments. But it seems the only practicable one with us. We do not make the judge's minutes the basis of the trial *in banc,* as is done in the English courts in revising trials *nisi prius.* But here a formal bill of exceptions is placed upon the record, the same as when a writ of error is expected to be brought. Before this is done the exceptions should be fully settled on hearing. But the haste with which business is transacted with us often precludes this, and the exceptions have to be revised after they are filed, very often. But we think this should not be allowed to be done by one who has ceased to sustain the duties and responsibilties of the office under which he tried the case. He is not under any official oath or responsi bility, and has no power or control over the records of the county court. Taking the case, then, as it stood in the printed copy, without the manuscript amendments, there are many of the questions with which we have no difficulty.

I. The specification seems to have been sufficient, no objection being made at the time the testimony was offered and received, it became too late to object on the ground of variance between the testimony and the specification, the claim being substantially of the character described.

II. We entertain no doubt that if the plaintiffs were induced to part with their property, by such fraudulent misrepresentations on the part of the purchasers and of the defendants, as will entitle them to rescind the sale and recover the property, and the property has come into the defendants' hands, and been converted into money, the plaintiffs may waive the tort, and maintain an action for the money. This is a familiar and elementary principle in the law of pleadings and procedure.

How far it would embarrass the recovery if Wheeler & Company acted in good faith, but the defendants were guilty of fraud, it is not necessary to consider here. The general rule undoubtedly is that the purchaser must be guilty of intentional fraud in order to entitle the seller to rescind the sale. Whether there is anything in the case which will operate as an estoppel, either upon Wheeler & Co. or the defendants, in regard to the fraudulent purpose of Wheeler & Co. at the time of the purchase, we do not know.

III. The defendants having received Wheeler & Co.'s property,

to convert into money, under a promise to pay the plaintiffs' debt, with those of certain other creditors of Wheeler & Co., and which they had converted into money, we regard the law as well settled, that the plaintiffs may sue in their own names for the money. That is distinctly recognized in *Crampton* v. *Ballard*, 10 Vt. 251, and this point of the decision is quoted by Chancellor KENT in his commentaries, without question. The other cases referred to in the Vermont Reports adopt the same view.

It is true, as held in *Crampton* v. *Ballard*, that when the contract is special, or to the extent that it is special, it can only be sued in the name of the party with whom it is made, and from whom the consideration moves. But that does not affect the case, after the money is realized, and it becomes absolutely the money of the plaintiff in the defendant's hands. Then the law implies a promise directly from the defendant to the plaintiff.

IV. In regard to the testimony of Wallace, that the defendants agreed to pay his debt against Smith, one of the firm of Wheeler & Co., under very similar circumstances with those claimed to be proved in this case, on the part of the plaintiffs, it seem to us it had no legal tendency to prove the plaintiffs' case. It was a matter wholly *inter alios*. There was no legal connection between the two cases. It did not follow by any means, that because the circumstances of the two cases were similar or identical even, that the defendants, by assuming one debt, were bound to assume the other. Nor is there any legal probability that he would pay one, because he agreed to pay the other. We are apt to think because the cases are alike, that the one helps prove the others. But they have no more legal connection than the giving a note to one man has with proving that the same party also gave his note to another. If the man bought on credit once, it is more probable perhaps that he will again, but one such case could not be shown to establish the others, for the reason that there is no necessary connection between them. To have one fact prove another, there must be a necessary or probable connection between the two.

V. We think, too, that two of the propositions put to the jury, the second and third, are defective without the amendment, and probably with it. Upon the theory upon which the case is argued, there is no doubt that a case of fraud, which will make the defend-

ants liable in this form of action, might be established. If the promise to accept Wheeler & Co.'s drafts was made without any purpose at the time it was made to fulfil it, and this was only a device to induce the plaintiffs to sell Wheeler & Co., on credit, with a view to get possession of the goods, and thus defraud the plaintiffs of them, and this was thus accomplished, and the goods converted into money by the defendants, and Wheeler & Co. were cognizant of this fraud, and knowingly aiding in its accomplishment, no doubt the defendants are liable in this action. But no such facts were required to be found by the jury. Nor is there any intimation in the charge that it would be necessary to find all these facts, to charge the defendants in that view of the case.

The other propositions in the charge are not very full, but perhaps there is no fatal defect in them. But these two, as tending to show an original fraud in obtaining the goods, seem to be deficient in all the main propositions requisite to be established.

The facts alluded to in these propositions have a decided tendency to show a binding agreement to accept Wheeler & Co.'s drafts, if such a contract were binding without writing, but no such issue existed in the case.

Judgment reversed and case remanded.