## IRA B. DELANO v. BENJAMIN S. GOODWIN.

In an action to recover the price of work done at the request of the defendant, in which the defence is that the defendant acted only as a public officer, and that the work was performed on the credit of the United States Government, the plaintiff may introduce evidence to show either that the defendant promised to pay, or that he did pay, for other labor done, or materials provided to be used, in the same service or undertaking.

Plaintiff, being a competent witness, may testify to his understanding of a verbal contract, the effect of which is in controversy, although the bargain was made with defendant by plaintiff's wife in plaintiff's absence, and all that plaintiff knew about the bargain was what his wife told him.

If there is a general legal presumption that services performed about government business, at the request of a public officer, are rendered on the credit of the government, there is no such presumption where the fact that the defendant claimed to be acting as a public officer was not made known to the plaintiff; or where the defendant, a physician and municipal health officer, was in charge of a United States naval steamer, infected with yellow fever, under a verbal permit from a navy yard commandant, who said that he had orders from Washington that defendant might "take" the ship, and that, for the expenses, the ship would be liable as any private ship.

ASSUMPSIT for services of plaintiff's wife in cooking food for persons sick with the yellow fever, and for water taken from plaintiff's well, in July, 1864. Writ dated Sept. 16, 1865. The United States steamer De Soto, infected with the yellow fever, arrived at the Navy Yard, in Kittery, Maine, opposite Portsmouth. The contagion began to spread, and the defendant, who was a health officer of Portsmouth, and a physician residing there, after some conference with the mayor and aldermen of Portsmouth, and with one Pearson, the commander of the Navy Yard, took possession of the De Soto, (her officers and crew having left her,) put keepers on board and caused her to be removed a mile, to the lower harbor, near the mouth of the river. Four of the keepers becoming sick with the yellow fever, the defendant caused them to be removed to a hospital in Kittery. Plaintiff's house was in Kittery, and within twenty rods of the hospital, and plaintiff's wife cooked some food for said four sick persons, and for one Furbush, their nurse, for a few weeks, the food being carried from plaintiff's house to the hospital by Furbush. The materials of the food were not furnished by plaintiff or his wife. Water was taken from plaintiff's well and carried to the De Soto by the keepers. Plaintiff testified that his wife was taken sick in December, 1864, and died Jan. 4, 1865, but not of yellow fever.

One question submitted to the jury was, whether plaintiff and defendant understood that defendant was to be personally responsible for the cooking and water.

Furbush testified by deposition that defendant employed him to take care of the four sick persons. Subject to defendant's exception, plaintiff was allowed to read from the deposition as follows: "Int. 6. State who agreed or promised to pay you for your services. Ans. Said Benjamin S. Goodwin agreed and promised to pay me." Subject to defendant's exception, one Mrs. Pryor was allowed to testify as follows: "In July, 1864, I lived in Kittery, near the hospital; my husband died of yellow fever July 17, 1864, having been sick one week; two days

before his death, Dr. Goodwin came to our house and spoke 'to my husband, said he wanted water from our well for the ship, and he would see us paid, and he afterwards paid me $37 for water."

Furbush, in his deposition, testified that defendant employed plaintiff's wife to make gruel, and to cook; that defendant "got me to go to Mrs. Delano's house and employ her for him to do my cooking and to make gruel for the said sick; he instructed me to make the offer for him of $5 per day for said service, and he would see that she had her pay for the same, and I communicated the above instructions, in person to her, and she replied that she accepted the said Goodwin's offer;" and that she died of yellow fever.

The plaintiff being a witness and on the stand, his counsel offered to prove by his testimony that his wife told him what had been said by Furbush and her, as testified to by Furbush, to which testimony defendant objected, and, because of his objection, the testimony was not introduced.

Plaintiff testified that he was not present when his wife was employed to do the cooking; that he was at home but a few days during the time in which she was doing the cooking; that all he knew about the bargain was what she told him at that time. Subject to defendant's exception plaintiff was allowed to testify that at that time he understood that defendant alone was personally liable to pay for the cooking and the water.

Defendant testified that all he did in Kittery, he did under the order of the United States Government; that he did not represent himself as acting as health officer in Kittery; that he did not understand that he had jurisdiction as health officer in Kittery; that the orders from the United States Government were a verbal permit from Pearson, who said: "There's the ship, Doctor, you can take her;" that Pearson said that he had orders to that effect from Washington, and that, for the expenses, the ship would be liable as any private ship; that such were his orders.

Defendant requested the court to instruct the jury that if he was acting as a public officer, the presumption was that the services of plaintiff's wife were rendered on the credit of the Government; which instructions the court declined to give and defendant excepted.

The court instructed the jury that if defendant was a public officer and acted as such, there was no such legal presumption; that if there was any presumption, it was one of fact for the jury to draw, to which instructions defendant excepted.

The verdict was for plaintiff; defendant moved to set it aside.

*Hatch*, for defendant.

*Goodall*, for plaintiff.

SMITH, J. I. "Each separate and individual case must stand upon, and be decided by, the evidence particularly applicable to it." Although "it is not easy in all cases to draw the line and to define with accuracy where probability ceases and speculation begins," it seems clear that, or-

dinarily, evidence that the defendant entered into contracts with third persons in a particular form would not be admissible in tending to show that he had made a similar contract with the plaintiff. "The fact of a person having once or many times in his life done a particular act in a particular way," does not prove "that he has done the same thing in the same way upon another and different occasion;" see *Hollingham* v. *Head*, 4 C. B. N. S. (93 E. C. L.) 388; *Jackson* v. *Smith*, 7 Cowen 717; *Spenceley* v. *De Willott*, 7 East 108; *Fileo* v. *Peebles*, 8 N. H. 226; *Wentworth* v. *Smith*, 44 N. H. 419; *Holcombe* v. *Hewson*, 2 Campb. 391; *True* v. *Sanborn*, 27 N. H. 383; *Lincoln* v. *Taunton C. M. Co.*, 9 Allen 181; *Smith* v. *Wilkins*, 6 C. & P. 180; *Phelps* v. *Conant*, 30 Vt. 277.

But where one of the questions at issue relates to the character in which the defendant acted, whether as a public officer or a private individual, the acts and conduct of the defendant in carrying on the business or undertaking in the course of which the controverted contract is alleged to have been made cannot be said to be collateral to the issue. If he may set up the defence that in all he did for the yellow fever patients he was acting as a public officer, it must surely be open to the plaintiff to show that, in one or more instances, the defendant while engaged in procuring assistance, &c., for these patients, contracted for it in his individual capacity. The defendant asks the jury to draw an inference favorable to himself from the character in which he was acting in all his dealings connected with this subject-matter. This makes the character in which he acted in any or all of the transactions in Kittery connected with the infection a direct issue in the case, and any evidence bearing on it is receivable.

Proof that the defendant employed Furbush about this business has no legal tendency to show that he also employed Mrs. Delano. But when it is proved or admitted that Mrs. Delano was employed by the defendant, then evidence of the capacity in which the defendant contracted with Furbush, (although by no means conclusive,) may be weighed by the jury as one element of evidence from which to determine in what capacity the defendant was acting when he engaged Mrs. Delano's services. It might not be unreasonable to infer that the defendant probably acted in but one capacity throughout the whole undertaking. *Moody* v. *Tenney*, 3 Allen 327; *Foye* v. *Leighton*, 24 N. H. 29.

The objection to the testimony of Furbush and Mrs. Pryor, must be overruled.

II. Before the statute making parties competent witnesses, the ordinary way to prove their intent or understanding was by circumstantial evidence. But now that the party himself is admitted to testify there is no reason for confining his testimony to a variety of circumstances tending to show his purpose or understanding, when he knows and can testify directly what that purpose or understanding was. Accordingly it has been held that where the intention or good faith of a party to a suit becomes material, it may be shown directly as well as from circumstances; and the party himself, if a competent witness, may testify directly to his

intention or understanding, unless prevented by some other principle of law applicable to the particular case. *Hale* v. *Taylor*, 45 N. H. 405; *Norris* v. *Merrill*, 40 N. H. 395; *Fisk* v. *Chester*, 8 Gray 506; *Thacher* v. *Phinney*, 7 Allen 146; *Lombard* v. *Oliver*, 7 Allen 155. The same principle must apply to the "understanding" of a party relative to the meaning or effect of a contract. To prove a contract it must be shown (except in cases where the doctrine of estoppel applies,) that both parties have understandingly assented to the same thing in the same sense; see 1 Parsons on Contracts, 4th ed., 399, *b*. But although the issue on trial is whether there has been a concurrence in understanding of two parties, yet it is not improper to prove separately the understanding of each; see *Hale* v. *Taylor*, 45 N. H. 405, p. 407. It is no objection to a single piece of evidence that it does not make out the whole of plaintiff's case. The evidence to prove several propositions (all of which are requisite to the case,) may be of different kinds and drawn from different sources; see *Blake* v. *White*, 13 N. H. 267, p. 272. In proving a concurrence of understandings the plaintiff may prove his own understanding by one witness, and defendant's understanding by another witness.

The admissibility of a party's evidence as to how he understood a contract cannot depend upon the grounds of that understanding, though these grounds may often be very important in determining the credit to be given to such evidence. Whether his understanding is founded on personal knowledge, or hearsay, is of no consequence in point of law, provided it actually concurs with the other party's understanding; and, if it does not so concur, then his testimony on this point is immaterial, except in cases of estoppel where the party claiming that the other is estopped would have to show how he himself understood the contract, and then show that the other party induced him to entertain and act upon that understanding.

Here the plaintiff was in law the contracting party, though the bargain was made by his wife as his agent or servant. The plaintiff's understanding of the contract was therefore one point in issue, and, although his understanding might naturally be expected to be the same as his wife's, yet there is no legal presumption to that effect, nor any rule which confines the inquiry in the first instance to the wife's understanding, and then compels us to infer the plaintiff's understanding therefrom. If the plaintiff and defendant both understood that defendant was personally liable, he is so liable whether the plaintiff's wife so understood it or not. The plaintiff was therefore properly allowed to testify that he understood that defendant alone was personally liable.

III. Even if the general rule relative to presumptions is as claimed by defendant, still he has no ground of exception in this case, for there is here no evidence on which to found the presumption. It did not appear that the fact that the defendant, a physician and municipal health officer, residing in the vicinity, claimed to be acting as a United States Government official, was made known to the plaintiff or his wife; see *Smith* v. *Hopkins*, 13 Johnson 313. Neither was the defendant, in

fact, a public officer within the usual meaning of the term. He held no commission or appointment. The only transaction between the United States Government and the defendant consisted in their surrendering to him the charge of an infected ship with the understanding that he was to look to the ship for the payment of all expenses.

*Judgment on the verdict.*