# CHITTENDEN COUNTY.

## JANUARY TERM, 1879.

### [CONTINUED FROM PAGE 365.]

---

BENJAMIN FAIRCHILD, ADMR. *v.* THE NORTH-EASTERN MUTUAL LIFE ASSOCIATION.

*Parties. Covenant. Gen. Sts. c.* 71, *ss.* 23, 24. *Life Insurance. Wagering Policy. Burden of Proof. Principal and Agent. Evidence. Presumption.*

For breach of covenant, the covenantee, or his legal representative, is the only one who has a right of action; and although the instrument containing the covenant may be expressed to be for the benefit of a third person, there is not such privity between such person and the covenantor as will enable him to maintain an action thereon. Thus, where by a sealed policy of insurance on the life of N., the insurer agreed, on the death of N., to pay a certain sum to F. or his legal representatives, and, on the death of N., F., who was administrator of N's estate, brought covenant in his representative capacity for the agreed sum, it was *held*, that the action was rightly brought by F. as administrator, and that the common-law rule in respect thereto was not changed by sections 23, 24, c. 71, Gen. Sts.

The written application on which the policy was issued was ostensibly made by N. through plaintiff, who was defendant's agent and medical examiner, and was signed by N. as applicant and by plaintiff as medical examiner. The policy appeared on its face to have been issued to N. "in consideration of the representations and agreements made in the application." After the policy was issued, and before the death of N., defendant's secretary addressed to N. and plaintiff certain notices of assessments to meet death losses, with receipts for payments thereon. Plaintiff testified that he paid the assessments. *Held*, that although under section 18, c. 52, Gen. Sts., and on the evidence, it must be assumed that plaintiff sued as trustee for himself as beneficiary as well as in his capacity of administrator, yet, as it did not appear that he procured the policy to be issued for his own benefit, but, *prima facie*, that N. procured it to be issued,— it was to be presumed after verdict that N. *did* procure it to be issued, and that the payments of assessments were made by her procurement; that N. had an insurable interest in her own life, and might procure insurance thereon for the benefit of another; and that, therefore, the question of whether plaintiff had an insurable interest in her life did not arise.

The application contained printed questions as to whether the applicant then or ever had "scrofula, cancer, or any cutaneous disease," and, among other things,

whether she then had "any disease or disorder, any infirmity or weakness, tending to impair the constitution or to shorten life." The written answer to each question was in the negative. The application stipulated that it and the medical examiner's certificate thereto attached, should be the basis of the contract; and that if any fraudulent or untrue answers were therein made, or any material facts suppressed, the contract should be void. The medical examiner's certificate, which was made by plaintiff, also stated the applicant's health to be good. N. died of cancer not long after the policy was issued, and question was made as to the truth and good faith of said answers. Defendant requested the court to charge that as plaintiff was its agent, the burden was on him to prove that the transaction was "in every respect, just, fair, and upright, and clear of all objection," and made on the "fullest disclosure" of every fact that he had any reason to believe material. The court charged that the answers were warranties, and that if they were in any respect untrue, plaintiff could not recover, although their falsity was not known to the applicant nor to any one. *Held*, that as the presumption was that in procuring the policy plaintiff acted solely as defendant's agent, and as the contract was not made by plaintiff in defendant's behalf, but by defendant itself after notice that it was for plaintiff's benefit, defendant could, at most, avoid the contract because only of some representation in the application or the appended certificate that was false, and known to plaintiff to be false, or of an omission by him fairly and fully to impart to defendant all his knowledge as to the condition of the applicant's health; and that, as the condition of the applicant's health was fully stated in the application and certificate, the charge more than complied with the request, so that there was no revisable error.

Where answers to questions put on cross-examination may in any degree affect any question of fact in the case, the questions are relevant, and the answers thereto do not conclude the examining party.

Defendant, in effect, requested the court to charge that the evidence introduced by plaintiff had no tendency to show the number of defendant's members at the time of N's death; and that there was no evidence to show whether an assessment was made or attempted by defendant, to pay the loss on the policy in question. *Held*, that the notices of assessments, *q. v.*, which were introduced in evidence by plaintiff, tended to show the number of members, &c.; that as the policy provided for the making of an assessment on proof of death, it was to be presumed that one was made; and that not to charge as requested was therefore no error.

COVENANT on a policy of insurance on the life of the plaintiff's intestate. Plea, general issue, and several special pleas in bar. Trial by jury, September Term, 1878, PIERPOINT, C. J., presiding.

The plaintiff offered in evidence a policy of insurance under seal, issued by the defendant, and dated July 4, 1874, the substance of which was as follows:

In consideration of the representations and agreements made in the application therefor, and the sum of eight dollars in hand paid, and also the additional sum of four dollars, as a deposit to pay for death losses of two memberships when they shall occur, and . . . of the further payment of all future assessments in advance for death losses, . . .

the said association does hereby issue this policy to Lorane D. Nay . . . with the following agreements : Upon the death of the said Lorane D. Nay, she having conformed to all the conditions thereof, and on satisfactory proof of said death being filed with the secretary of said association, an assessment for as many dollars as there are policy-holders in this association who have become such under this plan, shall be made upon all such policy-holders; . . . and the sum collected on such assessment (less the added cost for collection) shall be paid to Benjamin Fairchild, or his legal representatives, . . . within ninety days from the time of the filing said proof of death.

The policy provided that the defendant should in no case pay thereon more than $1,000 ; and it was also thereby agreed, among other things, that if the answers or declarations made in the application therefor, should be found in any respect untrue, the membership of the intestate should cease, and the policy should be void. The defendant objected to the admission of the policy, for that the administrator could not maintain the action. The plaintiff also offered in evidence certain notices of assessments with receipts for payments thereon that were addressed to the intestate and Fairchild by the defendant's secretary, from time to time after the policy was issued till the death of the intestate, which was admitted to have occurred in the latter part of March, 1875. Those notices appeared to be of assessments for death losses occurring from July 17, 1874, to February 18, 1875, and were signed by the secretary. Each notice contained a statement of the number of members liable. There was a notice bearing date October 1, and also one bearing date November 2. Each of those notices contained the statement, " We have over 1,000 members at this date, and are daily adding thereto." There was also a notice dated January 2, which contained the statement, " We have now 1100 members at this date, and are daily adding thereto." The several notices further stated the number of members liable as seven hundred and forty-four on July 17, seven hundred and ninety-five on August 19, eight hundred and thirty-eight on September 4, eight hundred and sixty-five on September 13, nine hundred and thirty-four on October 9, eleven hundred and eighty-two on February 16, and eleven hundred and eighty-three on February 18. The defendant objected to the admission

of the notices, for that they did not tend to show the number of members, nor the assessments; but they were admitted; to which the defendant excepted.

The plaintiff testified that he received said notices in due course of mail, and paid the several sums for which the receipts thereon were given. On cross-examination he testified that at the time the policy in question was issued he was, and for several years before that time had been, an agent for the defendant to obtain policies and transact business in reference thereto, but that owing to the controversy that had arisen in regard to the policy, he had ceased to do business as such agent, although he had never been notified of the termination of his agency.

On this evidence, as to the truth of which no question was made, the plaintiff rested. The defendant thereupon moved for a verdict, for that the plaintiff could not maintain the action as administrator, and that the evidence was not sufficient to entitle him to recover even if he could maintain the action in his representative capacity. The court declined so to rule; to which the defendant excepted.

The defendant then introduced in evidence the written application on which the policy was issued, which was dated July 1, 1874, and was admitted to have been signed by the intestate as applicant, and by the plaintiff as medical examiner. It contained the following printed questions: "Has the applicant now, or has she ever had, . . . scrofula, cancer, or any cutaneous disease?" "Has the applicant ever had any serious illness or personal injury?" "Are you now afflicted with any disease or disorder, any infirmity or weakness, tending to impair the constitution or to shorten life?" The written answer to each of those questions was in the negative. It was therein stipulated that the application and the medical examiner's certificate thereto attached, should be the basis of the contract between the applicant and the insurer, and that if any misrepresentations or fraudulent or untrue answers were therein made, or any facts that should have been stated therein were suppressed, then the contract should be void. The medical examiner's certificate also stated the applicant's health to be good, and

the answers to the questions in said certificate to be true. The defendant then introduced evidence tending to show that the intestate died of cancer of the lip and mouth; that she had had it at least several months before the policy was issued; that it was then in an advanced stage, and that she knew it; that she had lived in the plaintiff's family, and had been there two or three weeks when the application was made; that the plaintiff had known her for many years, had prescribed for her as a physician, knew the general state of her health, and knew when the application was made, and before, that she had a cancer; that the duration of cancers of the kind had by the assured was generally two and a half to three and a half years, and that the shortest recorded case was six months. The defendant also introduced evidence tending to show that she had had scrofula, had broken one of her arms, and had been in ill health for a year or more, when the application was made; and that all those facts were then known to the plaintiff. The plaintiff introduced evidence tending to show that the cancer came after the policy was issued, that the intestate had not had scrofula, that the breaking of the arm occasioned no permanent injury to her health, and that when the policy was issued she was in general good health.

Certain witnesses on the part of the defendant testified to an interview had with the intestate in the latter part of June, 1874, at which the sore on her lip was examined, and declared by one of the witnesses to be a cancer, and to a condition of the sore that expert witnesses testified indicated that it was a cancer. It was contended on the part of the plaintiff that that interview was not had in the latter part of June, but on or about July 16. One of the witnesses who testified to that interview on the part of the defendant, was Mrs. Manley Holmes. She testified with considerable positiveness that the interview occurred in June, 1874. On cross-examination she was inquired of in regard to the first time her attention was called to that interview, and if she did not then call in Mrs. Edgar Holmes, who was present at that interview, and talk the matter over with her. She was also asked if they did not then attempt to fix on the time by referring to other contemporaneous matters—the cutting of certain hay, and the selling and

78

carrying away of a hog. But she denied calling in Mrs. Edgar Holmes, and denied having talk with her about it. The plaintiff then introduced Mrs. Edgar Holmes, and asked her when her attention was first called to the date of that interview, and she replied that it was at some time when she was at Manley Holmes's after the intestate's death. She was then asked what was said between her and Mrs. Manley Holmes, to ascertain the date of that interview; to which the defendant objected, for that the plaintiff was bound by the answers of Mrs. Manley Holmes; but the witness was permitted to answer, and testified in effect that the date of that interview was then talked about, and by reference to the cutting of certain hay, and the carrying away of a hog, was ascertained to be July 16. To the admission of that testimony the defendant excepted.

The defendant requested the court to charge that the action could not be maintained in the name of the plaintiff as administrator; that the proof on the part of the plaintiff was not sufficient to entitle him to recover; that the number of members at the time of the intestate's death was not shown, nor any amount or criterion of amount as the basis of recovery; that it was not shown whether or not any assessment was made or attempted to be made, to pay the loss on the policy in question; that the evidence on the part of the plaintiff was not sufficient to support the transaction as a valid contract of insurance in his favor; that as the plaintiff was the defendant's agent, the burden was on him to prove that the transaction was " in every respect just, fair, and upright, and clear of all objection," and made on the " fullest disclosure " of " every fact and circumstance that he had any reason to believe " material; that the effect of an omission to disclose was not limited to questions in the application, but extended to any material fact; that on the general principles of the law of insurance, if the answer of any specific question was untrue, the plaintiff could not recover, although there was no fraud, as the answers were warranties ; and that if there was any intentional misrepresentation or concealment on the part of either the intestate or the plaintiff, it avoided the policy.

The court charged that the action might be maintained in the name of the administrator ; that the plaintiff was not precluded from maintaining the action by having been the defendant's agent when the policy was issued and himself the beneficiary ; that the burden was on the defendant to show that when the application was made the representations therein were false ; that the answers to the questions as to whether the applicant had certain diseases were warranties that she had not those diseases, and were not mere representations, and that if those answers were in any respect untrue, the plaintiff could not recover, even though their falsity was not known to the applicant nor to any one.

To the refusal to charge as requested, as far as the court did refuse, and to the charge given on the subject of the requests, the defendant excepted.

*E. J. Phelps* and *R. S. Taft*, for the defendant.

The action cannot be maintained in the name of the plaintiff as administrator. *Davenport* v. *North Eastern Mut. Life Association,* 47 Vt. 528 ; Bliss Life Ins. 496, 497 ; *Hoyle* v. *Guardian Life Ins. Co.* 6 Robertson, 567 ; *Ruppart* v. *Union Mut. Ins. Co.* 7 Robertson, 155 ; *Meyers* v. *Keystone Mut. Life Ins. Co.* 27 Penn. 263 ; *McCord* v. *Noyes,* 3 Bradf. 139 ; *Fraternal Mut. Life Ins. Co.* v. *Applegate,* 7 Ohio, 295 ; In re *Kugler,* 3 Bigelow Life Ins. Cas. 592. These cases proceed on the ground that such a policy, under such statute or charter provisions as those of Vermont, is in law a contract with the person for whose benefit the policy is taken and to whom it is made payable. Gen. Sts. c. 7, ss. 23, 24. The question is, with whom is the contract, in its legal effect ? A life insurance for the benefit of a third person is a peculiar contract. The theory on which it rests, the relation of the parties, the object in view, and the special provisions of the statute, are all to be regarded in giving it a construction.

A contract regulated as to its legal effect by a statute, must be construed as if the provisions of the statute were in terms incorporated into it. It may therefore receive a very different construction from that which might prevail in the absence of the statute.

Without the statute, it would seem plain that the legal effect of the policy is, to confer the right of action on the person to whom the payment is agreed to be made and who has the entire beneficial interest. But taken in connection with the statute, the question cannot be open to doubt. The statute excludes the estate of the insured from all benefit under the policy, and secures it exclusively to the beneficiary. The contract, if not so before, becomes a contract with him in its legal effect. Upon what conceivable ground, then, should the administrator have a right of action upon it?

The plaintiff had no insurable interest in the life of the intestate, and without it the policy cannot be supported. A life insurance policy was at first regarded as an indemnity, like a fire or a marine policy, to support which a legal interest must be shown. *Godsell* v. *Boldero*, 9 East, 72; *Bevin* v. *Conn. Mut. Life Ins. Co.* 25 Conn. 244; *Lord* v. *Dale*, 12 Mass. 115; 4 Bigelow Life Ins. Cas. 455, 458. A more liberal rule has since obtained, and a policy is sustained whenever the beneficiary has *any* personal interest in the life insured. But *some* such interest must always appear. Without it, a policy is regarded as a mere wager, and is void. *Conn. Mut. Life Ins. Co.* v. *Schœffer*, 94 U. S. 460; *Loomis* v. *Eagle Life Ins. Co.* 6 Gray, 399, *per* SHAW, C. J.; *Phœnix Life Ins. Co.* v. *Bailey*, 13 Wal. 616; 3 Kent Com. 368; *Hoyt* v. *N. Y. Ins. Co.* 3 Bosw. 440; *Mowry* v. *Home Life Ins. Co.* 9 R. I. 346; *Cammack* v. *Lewis*, 15 Wal. 643; *Ætna Life Ins. Co.* v. *France*, 94 U. S. 561; *Ruse* v. *Mut. Ben. Life Ins. Co.* 23 N. Y. 516; *Stevens* v. *Warren*, 101 Mass. 564; *Mitchell* v. *Union Life Ins. Co.* 45 Me. 104; *Shilling* v. *Acc. Ins. Co.* 2 H. & N. 42; Bliss Life Ins. ss. 20–31. A wagering transaction is void in Vermont. *Collamer* v. *Day*, 2 Vt. 144. Whether the insurance runs in terms to the insured for the benefit of, and payable to, the beneficiary, or directly to the beneficiary, is immaterial, under the circumstances of this case. *Phœnix Ins. Co.* v. *Bailey, supra.*

The court erred in ruling that the burden of proof was not on the plaintiff to establish the fairness and honesty of the transaction, but was on the defendant to impeach it.

The plaintiff was the agent of the defendant. He was also its medical examiner. He stood toward it, therefore, in a two-fold fiduciary relation of the most important character. Standing in that relation and dealing with his principal for his own benefit, in a transaction on the face of it so suspicious, he cannot avail himself of the benefits of it without proving that it was in all respects fair, honest, just, and *in uberrima fide*. This burden the law casts upon him, and until it is fully discharged, the transaction is regarded as constructively and presumptively fraudulent. The rule of law on this subject admits of neither doubt nor exception. It extends to every conceivable relation of a fiduciary character, and to every conceivable transaction in which a person standing in such a relation deals with his principal for his own benefit. 1 Story Eq. Jurisp. ss. 311, 312; *Hunter* v. *Atkyns*, 3 Myl. & K. 113; Paley Agency, 36, note, 11, note; *Edwards* v. *Meyrick*, 2 Hare, 60, 68; *Montesquieu* v. *Sandys*, 18 Ves. 302; *per* Lord. Eldon; 2 Sugden Vend. & Purch. 362, 363; Story Agency, 212, 252, note; *Gillett* v. *Peppercorne*, 3 Beav. 78, 83; *Gibson* v. *Jeyes*, 6 Ves. 266, 278; *Harris* v. *Tremenheere*, 15 Ib. 34, 40; *Farnham* v. *Brooks*, 9 Pick. 212; *Howell* v. *Ransom*, 11 Paige, 538; *Stone* v. *Hayes*, 3 Denio, 579; *Aberdeen Railway Co.* v. *Blackie*, 1 Macq. Ap. Cas. 461; *Fox* v. *Mackrath*, 1 Lead. Cas. Eq. 105, notes; *Jackson* v. *Ludeling*, 21 Wal. 616; *Koehler* v. *Iron Co.* 2 Black, 720; *Michaud* v. *Gouraud*, 4 How. 503.

So much of the evidence of Mrs. Edgar Holmes as was objected to, should have been excluded. Its materiality is obvious. It was hearsay. It cannot be sustained as impeaching Mrs. Manley Holmes. •

There was no adequate or legal proof tending to show the amount to which the plaintiff was entitled under the policy, if entitled to recover at all.

*E. R. Hard*, for the plaintiff.

The action was properly brought by the plaintiff as administrator. Though the insurance was effected for Fairchild's benefit, and the covenant is to pay to him, the contract was made with the

intestate, the consideration moved from her, and the covenant runs to her. Her representative is therefore not only the proper party to bring the action, but the only party who can sustain an action in this form. *Davenport* v. *North-Eastern Mut. Life Association,* 47 Vt. 528 ; *Fugure* v. *Mut. Society of St. Joseph,* 46 Vt. 362 ; *Hall* v. *Huntoon,* 17 Vt. 244 ; *Corey* v. *Powers,* 18 Vt. 587.

The policy is a specialty, and covenant is the proper form of action. Angell & Ames Corp. ss. 223–225, 295 ; *Clark* v. *Woolen Manf. Co.,* 15 Wend. 256 ; *Marine Ins. Co.* v. *Young,* 1 Cranch, 321 ; *Randall* v. *Van Vechten,* 19 Johns. 60, 65.

But if it were not, the objection was waived by the defendant's neglect to make it in the County Court.

There was no error in admitting the notices of assessment. They tended to show the number of members subject to assessment.

The objection to the testimony of Mrs. Edgar Holmes was properly overruled. Her testimony was competent to impeach that of Mrs. Manley Holmes as to the time of the interview to which she had testified.

The defendant was not entitled to a compliance with that part of its request that related to the burden of proof. The policy was not issued by Fairchild, but by the defendant itself, on the written application of the intestate ; and there is neither authority nor reason for holding that in such a case, a different rule as to the burden of proof should be applied than is applied to ordinary cases.

The opinion of the court was delivered by

ROYCE, J. This is an action of covenant broken on a policy of life insurance issued by the defendant to the plaintiff's intestate, Mrs. Lorane D. Nay. The policy is a contract under seal *inter partes* — Mrs. Nay of the one part, and the North-Eastern Mutual Life Association of the other part — and to that contract the plaintiff's intestate and the defendant were the sole legal parties. Had the policy been a simple contract, under the circumstances of this case, the amount of the insurance being made in terms pay-

able to Fairchild or his legal representatives, an entirely different question would arise as to who is the proper party to bring the suit—Mrs. Nay's administrator or Fairchild — and it would become our duty to extract some conclusion from numerous and somewhat conflicting authorities. But the policy is a sealed instrument, and its covenants are by and between the legal parties to it, viz., Mrs. Nay and the North-Eastern Mutual Life Association. In deciding who is the proper party to bring covenant broken upon that policy, it is not material that the covenant is for the benefit of a third person. The law is well settled that upon instruments under seal suit must be brought by the covenantee ; and although the instrument may be expressed to be for the benefit of a third person, there is not sufficient privity in law between such third person and the covenantor to enable him to maintain an action. 1 Chit. Pl. 3d Am. Ed. 3 ; Chit. Cont. 5th Am. Ed. 57 ; Dicey Parties, 101 ; 12 Pick. 554 ; 12 Met. 167 ; *Millard* v. *Baldwin*, 3 Gray 484 ; *Inhabitants of Northampton* v. *Elwell*, 4 Ib. 81 ; 13 Mass. 396 ; 15 Me. 285 ; *Hornbeck* v. *Westbrook*, 9 Johns. 73 ; *Crampton* v. *Ballard*, 10 Vt. 251 ; *Phelps* v. *Conant*, 30 Vt. 277 ; *Johnson* v. *Colburn*, 36 Vt. 705. This principle is directly applied in the case of an action on a life policy under seal brought by a third person for whose benefit the insurance was obtained, and who paid all the premiums, except a part of the first one, in *Flynn* v. *North American Life Ins. Co.*, 115 Mass. 449. In that case the court say : " By the policy the insurers promise and agree to pay the sum insured to Flynn and his representatives. But this promise and agreement is expressed to be made to and with Royle, and his representatives ; and the policy.is under seal. Royle, and not Flynn, is the covenantee. It is well settled that upon an agreement under seal none but a party to it can maintain an action at law. . . . Whatever, therefore, might have been Flynn's right of action, if the agreement sued on had been a simple contract, there was no sufficient privity between him and the insurers to maintain an action in his name upon this policy." In the case of *Davenport* v. *The North-Eastern Mutual Life Association*, 47 Vt. 528, relied upon by the defendant, the action was

assumpsit, and the hearing in this court upon demurrer to the declaration. The question of the legal distinction between a simple contract and a contract under seal, as affecting the proper party to bring the suit, did not arise. Sections 23, 24, c. 71, Gen. Sts., to which we are referred by defendant's counsel, do not in any respect modify or change the rules of the common law in respect to the proper parties to an action brought to enforce a contract of insurance. The action, therefore, is properly brought by the administrator of Mrs. Nay.

The second point made by the defendant is that Fairchild had no insurable interest in the life of Mrs. Nay, and that the policy is therefore a wagering contract, and void by the law of this State. This action is brought by Benjamin Fairchild in his capacity of administrator of the estate of Mrs. Nay, as the nominal party to the sealed instrument declared upon. Section 18, c. 52, Gen. Sts., provides that, "when an executor or administrator shall commence or prosecute an action for any debt, demand, or claim for damages, and shall be only a trustee of such claim for the use of another person, or where the claim, although prosecuted in the name of the executor or administrator, belongs to another person, the sum or property recovered shall not be considered as assets in the hands of such executor or administrator, but shall be paid over to the person entitled to the same, after deducting or being paid the costs and expenses of the prosecution." Upon this statute and the evidence before us it must be assumed that the plaintiff sues also as trustee for the beneficiary named in the policy and the real party in interest in this suit, viz., himself. If it were shown, therefore, that in point of fact Fairchild procured this policy to be issued upon the life of Mrs. Nay himself, and for his own benefit, the question of his insurable interest perhaps might properly arise. But the *prima-facie* showing of the policy, application, and receipts is, that Mrs. Nay procured the policy to be issued herself, upon her own life, and chose to make Fairchild the beneficiary. To rebut this, the only evidence in the case tending to show that Fairchild procured the policy to be issued, is his own testimony that he paid the assessments made upon

the policy by the company and evidenced by the receipts which are made a part of the case. Whether he paid them from his own pocket, or at the request and as the agent of Mrs. Nay, does not appear; and in such a state of the evidence, the presumption being in favor of the verdict, we are bound to presume that the policy was procured by Mrs. Nay upon her own life, as is the purport of the instrument itself, the application upon which it was issued, and the receipts for payments, and that whatever payments Fairchild may have made were made at her request. " It cannot be questioned," say the Supreme Court of Indiana, in *Provident Life Ins. Co.* v. *Baum*, 29 Ind. 236, " that a person has an insurable interest in his own life, and that he may effect such insurance, and appoint any one to receive the money in case of his death during the existence of such policy." And he may effectuate this object by an assignment of the policy, or by immediately appointing such person as the beneficiary. Nor can the insurer set up as a defense to an action brought upon such a policy by, or for the benefit of, the beneficiary or assignee a want of insurable interest in the plaintiff, especially where common-law rules of procedure obtain and the beneficiary or assignee must sue as plaintiff in the name of the assured. *Clark* v. *Allen*, 17 Am. Law Reg. N. S. 83 ; *Conn. Mut. Life Ins. Co.* v. *Schaefer*, 16 Ib. 392 ; 13 N. Y. 31; 20 Ib. 32; 29 Ind. 236 ; 2 Casey 189. In *Campbell* v. *New England Mut. Life Ins. Co.* 98 Mass. 381, the court say : " It is the interest of A in his own life that supports the policy. The plaintiff did not, by virtue of the clause declaring the policy to be for her benefit, become the assured. She is merely the person designated by the agreement of the parties to receive the proceeds of the policy upon the death of the assured. It was not, therefore, necessary that she should show that she had an interest in the life of A by which the policy could be supported as a policy to herself as the assured." *Franklin Ins. Co.* v. *Hazzard*, 41 Ind. 116, and one or two Kansas cases are to a certain extent in conflict with these decisions, but they are all cases where the policy was sold by the assured to a speculator, and even under such circumstances the weight of authority

seems to be decidedly the other way, the only well supported exception to the general rule being where combination is shown between the beneficiary or assignee and the assured to procure the policy to be issued under cover for the benefit of the former ; and the burden of proof rests upon the insurer to show such fraudulent combination. *Valton* v. *Nat. Fund Life Ins. Co.* 20 N. Y. 32. The question of Fairchild's insurable interest, therefore, does not, upon the evidence before us, properly arise in this action.

The defendant requested the court to charge the jury that the burden of proof was upon the plaintiff to establish the *bona fides* of the transaction. Upon the case as presented to us, the legal presumption must be that in the matter of procuring the policy to be issued, Fairchild acted solely as agent for the defendant; that Mrs. Nay went to him as such agent, and desired to procure a policy, and he forwarded to his principal her application in writing, with his own certificate as medical examiner, whereupon the policy was made out and issued by the defendant. The contract was by and between Mrs. Nay and the defendant, and Fairchild was not a party to it. That it enured to his benefit, was apparent upon the face of the application, which, therefore, was notice of that fact to the defendant, and sufficient to put it upon inquiry as to whether those representations which were made by Fairchild were true. By neglecting to make that inquiry, and electing to issue the policy, the defendant must be regarded as accepting and ratifying the acts and statements of its agent. The authorities to which we are cited by the defendant's counsel, support the well-established rule which would cast upon an agent seeking to enforce against his principal a contract made by him as such agent on behalf of his principal, and enuring to his own benefit, the burden of proof to establish *uberrima fides*. In the case at bar, the contract was not made or executed by the agent on behalf of his principal. The agent forwarded to his principal certain proofs and documents, which upon their face gave notice that the contract proposed was to enure to his benefit ; and the principal, upon the representations contained in such documents and proofs, and with such notice, elected to execute the contract and receive

the consideration stipulated for therein. It can only be contended by the defendant that if, in the application or medical examiner's certificate upon which this policy was issued, there was any false representation within the knowledge of the agent, or any omission by him to impart to his principal fully and fairly all knowledge in his possession that might affect the question of Mrs. Nay's condition of health, then the principal, upon discovery thereof, may repudiate the contract; and that upon this point the burden is upon the plaintiff. We think, from the case as presented to us, that the defendant can claim no error upon this point, because, in the application and certificate, Mrs. Nay's condition of health in all respects made the subject of controversy in this action, is set forth in the form of positive statement, and the court charged the jury that these representations were to be regarded as warranties, and that if they were in any respect untrue the plaintiff could not recover, even although their falsity was not known to Mrs. Nay, nor to any one else; thus, as it seems to us, more than complying in substance with the defendant's request.

The question as to the admissibility of that portion of the evidence of Mrs. Edgar Holmes which was objected to, must be considered in connection with the evidence of Mrs. Manley Holmes. The time when the sore on Mrs. Nay's lip was first noticed was material, and Mrs. Manley Holmes testified with considerable positiveness that it was in June, 1874, while plaintiff claimed it was on or about the 16th of July, 1874. The object and purpose of the cross-examination of Mrs. Manley Holmes seems to have been to show that she was mistaken as to the date, and to obtain from her admissions of facts and circumstances by which it could be demonstrated that she was mistaken. It is often difficult to determine from the record that is sent to this court, whether interrogatories put to witnesses are relevant to any question of fact in the case, or not. The County Court can much better judge of the matter than we can, and where that court has determined the question this court will not reverse its decision, unless it clearly appears to have been erroneous. We understand the rule to be that where the answers to questions put to a witness upon cross-

examination may in any degree affect any question of fact that is made in the cause, the questions are relevant. The questions put to Mrs. Manley Holmes upon her cross-examination, we think, were relevant to a material issue of fact in the cause, and, being relevant, the plaintiff was not concluded by her answers. When a party, in the cross-examination of a witness asks irrelevant questions, or examines him as to collateral matters, he is bound by the answers that the witness may give, but where the examination is relevant, the party is not thus bound. Upon the evidence detailed in the exceptions, it would appear that the evidence of Mrs. Edgar Holmes which was objected to, tended to show that the time when the sore was first noticed on the lip of the plaintiff's intestate was at a later date than the date testified to by Mrs. Manley Holmes, and was admissible.

The only remaining exception insisted upon by the defendant is to the refusal of the court to charge that the proof introduced by the plaintiff had no tendency to show the number of members of the association at the time of Mrs. Nay's death, the covenant being to pay as many dollars (not exceeding $1,000) as there should be members at that time, and it being incumbent upon the plaintiff to show such number as the measure of his recovery ; and also that there was no evidence that any assessment was made, or attempted to be made, upon the members of the association, to pay the loss upon Mrs. Nay's policy. The policy itself provides that upon satisfactory proof of the death of the assured, she having conformed to all the conditions thereof, an assessment *shall* be made in the way and manner therein provided. The presumption being that the defendant has fulfilled all the terms of the contract incumbent on it to fulfil, it was not necessary for the plaintiff to prove affirmatively that the assessment was made. The notices of assessments made by the defendant upon Mrs. Nay's policy, signed by the secretary of the association, and put in evidence by the plaintiff, are expressed to be for the payment of death losses occurring at different dates within the time of Mrs. Nay's membership, from July 17, 1874, to February 18, 1875, her death being admitted in the latter part of March,

Fairchild *v.* North-Eastern Mut. Life Asso.

1875. In those notices issued under date of October 1, and November 2, 1874, appears the statement, " We have over 1,000 members at this date, and are daily adding thereto ;" and in the notice. dated January 2, 1875, " We have now 1100 members at this date, and are daily adding thereto." These several notices further set forth as the number of members liable July 17, 1874, seven hundred and forty-four ; August 19, seven hundred and ninety-five ; September 4, eight hundred and thirty-eight ; September 13, eight hundred and sixty-five ; October 9, nine hundred and thirty-four ; February 16, 1875, eleven hundred and eighty-two, and February 18, 1875, eleven hundred and eighty-three, thus showing a steady increase in the membership of the association up to February 18, 1875, when it is represented by the secretary as comprising eleven hundred and eighty-three members. This membership being shown at a date so shortly prior to the death of Mrs. Nay, and the evidence showing an uninterrupted increase prior and up to that time, the presumption, in the absence of proof to that effect, certainly cannot be that there was a *decrease* between February 18, 1875, and the date of Mrs. Nay's death ; and we think this evidence, taken together, did have a tendency, at least, to prove that at the last mentioned date there were as many as a thousand members, and was properly submitted to the jury for that purpose.

*Judgment affirmed.*