## CALEB B. HALL *v.* HIRAM HUNTOON.

An agent, who makes a promise, and who does not conceal his agency, nor exceed his authority, is not liable to an action upon such promise.

A declaration, counting upon a sale made by the plaintiff to the defendant, and a promise thereupon made by the defendant to the plaintiff, is not sustained by proof of a sale made by a third person, and a promise by the defendant to such third person, for the benefit of the plaintiff. Where a promise is made to a third person for the benefit of the plaintiff, the declaration must state it to have been made according to the fact.

A contract entered into to indemnify a sheriff for a *past* neglect is not void for illegality.

The legal interest in a contract is in the person to whom the promise is made, and from whom the consideration passes, and he is the person who must bring the action upon such contract,—as held in *Pangborn v. Saxton*, 11 Vt. 79, and *Crampton v. Ballard*, 10 Vt. 251.

The case of *Dutton et ux.* v. *Pool*, 2 Lev. 210, 1 Ventr. 318, T. Raym. 302, commented upon and explained.

ASSUMPSIT upon an alleged contract of indemnity. Plea, the general issue, and trial by jury.

The plaintiff's declaration was, in substance, that the plaintiff, on the 6th day of November, 1841, as constable of the town of Clarendon, had an execution to collect in favor of one Eliza A. Marsh against the first school district in the town of Shrewsbury, and on the same day levied said execution upon a *horse*, the property of one Levi Finney, an inhabitant of said district, and sold said horse to satisfy the same; that the defendant afterwards, to wit, on the 15th day of November, 1841, " in consideration that the said Caleb [the plaintiff] would sell to him the said Hiram [defendant], ' the horse aforesaid for the sum of fifteen dollars, undertook, ' and to the said Caleb promised faithfully, to indemnify and save ' harmless the said Caleb from all damages and costs, payments and ' expenses which he, the said Caleb, should, or might, incur, bear, ' or sustain, by reason of his having so levied said execution upon ' the said horse of the said Levi Finney, and sold the same;" and

the plaintiff averred that he, confiding in said promise, sold said horse to the defendant for said sum of $15, and that afterwards the said Finney commenced an action against the plaintiff for having levied said execution upon said horse and sold the same, and recovered judgment against the plaintiff for damages and costs, of which the defendant had notice; and that the defendant had not indemnified the plaintiff, according to his promise. The declaration contained a second count, in substance the same with the one above specified, and also a count for money paid, laid out and expended.

On trial the plaintiff, in support of the issue on his part, offered to prove, that, in the fall of 1841, he held, as constable, an execution in favor of Eliza A. Marsh against the first school district in the town of Shrewsbury; that he made a demand of the amount due thereon of the clerk of said district, but made no demand of the prudential committee, and, six days thereafter, levied said execution upon a horse belonging to one Levi Finney, an inhabitant of said district; and that, at the plaintiff's request, there being no other bidders, one Jeffrey A. Barney, the uncle of the plaintiff, bid off said horse for ten dollars, and paid for the same to the plaintiff; that, soon after, said Hall learned that his proceedings had been informal, and informed said Barney thereof; that said Finney soon after procured the defendant to go to said Barney and purchase said horse back again, and furnished him with money for that purpose; that the defendant thereupon applied to the said Barney, and purchased the horse back for fifteen dollars, and paid him therefor, and returned the horse to said Finney; that on that occasion, and as a part of the contract of purchase, the defendant undertook and promised, in consideration that said Barney would sell him the horse for fifteen dollars, to indemnify the plaintiff and save him harmless from all cost and damage arising from his so selling said horse, as stated in the declaration; that said Barney made this contract for the benefit of the plaintiff, and from motives of affection for him; that the said Finney afterwards sued the plaintiff for so selling said horse, and recovered, as described in the declaration, on account of the irregularity of the plaintiff's proceedings in collecting said execution; and that, on the trial of the said last mentioned suit, the

said Huntoon was examined as a witness, and wholly denied that he was said Finney's agent in purchasing said horse.

The court decided that the plaintiff would not be entitled to recover on showing these facts; to which decision the plaintiff excepted. A verdict passed for the defendant.

*S. H. & E. F. Hodges* for plaintiff.

I.   The first question in the case is, whether the action was properly brought, or whether Barney should have been plaintiff,—Barney having furnished the consideration, but the plaintiff, only, being interested in the performance of the contract.   The plaintiff's counsel take this to be the principle that governs this class of cases. Where the party advancing the consideration of such a contract, (resting in parol) may be presumed to have parted with his interest in it, and to have transferred it, either by donation, or sale, to the person for whose benefit the contract enures, then the latter must bring the action ; and the former will be considered as having acted as his agent, in advancing the consideration and taking the promise.   The case, then, becomes perfectly parallel to that of contracts made by an agent for his principal, in which it is well settled the principal.must sue.   *Pigott* v. *Thompson*, 3 B. & P. 147.

The principle is fully sustained by the well settled doctrine, that money paid by one for the benefit of a third person may be recovered by the latter.   *Ward* v. *Evans*, 2 Ld. Raym. 928.   *Beckingham* v. *Vaughan*, 1 Rolle 7.   *Harris* v. *DeBervoir*, Cro. Jac. 687. (*Greenville* v. *Stancy*, 36 H. 6, *pl.* 10, and 39 H. 6, *pl.* 44,— there cited.)   *Weston* v. *Barker*, 12 Johns. 276.   *McMennomy* v. *Ferris*, 3 Johns. 72.

This class of decisions is sometimes, indeed, treated as if they were exceptions to the general rule.   But it is not so.   They are in strict accordance with sound principle and authority.   This will appear from numerous cases which do not come within this class, and yet sustain our general position.   *Disborne* v. *Denaba*, 1 Rolle 30 ;—*S. C.*, 1 Vin. Ab. 333.   *Starkey* v. *Mylne*, 1 Rolle 32 ;— *S. C.*, 1 Vin. Ab. 335. *Rixon* v. *Horton*, 1 Vin. Ab. 334 in margin. *Marchington* v. *Vernon*, 1 B. & P. 101, note *b.*   *Shaw* v. *Sherwood*, Cro. Eliz. 729. *Horwood* v. *Shaw*, Yelv. 23.   10 Wend. 88.

Hall *v.* Huntoon.

*Farley* v. *Cleveland*, 4 Cow. 432. *Arnold* v. *Lyman*, 17 Mass. 400. *Cabot* v. *Haskins*, 3 Pick. 83. *Spear* v. *Mallory*, 13 Johns. 496. Here the persons advancing the consideration had transferred their interest in it by way of sale. Many other cases, where they had parted with it from motives of affection for the person to be bene-fitted, are identical in principle with the present action. It will be seen that they are not confined to the relation of parent and child, as has been sometimes suggested. *Dutton* v. *Poole*, cited 3 B. & P. 149, note, and in 1 Vin. Abr. 337. Cowp. 443. *Oldham* v. *Bateman*, 1 Rolle 31 ;—*S. C.*, 1 Vin. Ab. 334. *Sadler* v. *Paine*, Sav. 23, (cited com. Dig. 304 &c.) *Lenn* v. *Hays*, Moor. 550,' (cited 8 Mod. 117.) *Levet* v. *Hawes*, Cro. Eliz. 619. Ib. 652. *Anon.*, 1 Vent. 6, (cited 2 Com. on Cont. 565.) *Schermerhorn* v. *Vanderheyden*, 1 Johns. 139. *Sailly* v. *Cleaveland*, 10 Wend. 158. *Shephard* v. *Shephard*, 7 Johns. Ch. R. 57. *Felton* v. *Dickinson*, 10 Mass. 287. *Jackson* v. *Mayo*, 11 Mass. 147. *Crocker* v. *Higgins*, 7 Conn. 342. *Guallaker* v. *Guallaker*, 5 Watts 200. 1 Ch. on Pl. (Ed. 1844) p. 4, note 1, and cases cited.

We admit that sometimes it has been decided that the person furnishing the consideration must sue. For aught that appears, it might be because he had never parted with his interest in it. Our argument admits and supposes such instances may occur. Before our position can be shaken in this way however, we must see from the case produced that the person advancing the consideration had parted with the control of it, and yet the person to be benefitted was not allowed to maintain the action. Such cases can rarely be found, and none in which *Dutton* v. *Poole* has been necessarily overruled. *Norris* v. *Pine*,—cited 1 Vin. Abr. 337.

The ground, upon which that position has been most strongly assailed, is its apparent inconsistency with the principle, that the payment of the consideration points out the person in whose name the action must be brought. We contend that this principle is to be confined to those cases where several parties may derive a ben-efit from the performance of the contract ; such was *Crampton* v. *Ballard*, 10 Vt. 251. It has nothing to do with those cases where but one person is interested in its performance.

Cases analogous to these in principle have also been cited

against us, in which it has been held, that, where the defendant has promised to pay a debt, which the person advancing the consideration owed another, the latter, the creditor, could not sue, but the debtor, the person advancing the consideration. In these it is obvious that the debtor has an interest in the performance of the contract, as well as the creditor ; and as he bought the contract, he alone is to have the benefit of it, and must sue on it. To this class belong *Crow* v. *Rogers*, Str. 592. A like case, still more remote in principle, however, is sometimes found, where the consideration consists in the indebtedness of the defendant to the debtor, and that indebtedness is not discharged. Then the creditor can of course maintain no action. Not only is another equally interested in the contract, but there is in fact no consideration for it ;—such was *Phalan* v. *Stiles*, 11 Vt. 82. Even there it was admitted, that, had the original indebtedness of the defendant to the plaintiff's debtor been discharged, the promise made to the latter to pay his debt to the plaintiff would have sustained the action. Our main principle could not have been more strongly recognized.

II. It was farther objected, that the contract was without consideration, Barney having no property in the horse on account of the illegality of the sale to him. In reply we say, that, the property being in Barney's possession, the sale was accompanied with an implied warranty, which was a sufficient consideration for the contract ; and that the defendant cannot be allowed to repudiate the contract thus, while he enjoys the benefit of it, having never been disturbed in the possession of the property sold to him. *Vibbard* v. *Johnson*, 19 Johns. 77. *Sumner* v. *Gray*, 11 Leigh 261, (cited in Am. Law Mag.) It appears farther, that the defendant purchased the horse of Barney with the assent and even as the agent of Finney, the former owner. The sale to the defendant is thereby conclusively affirmed by the only one who could disturb it ; and no one else has power to question it.

III. It was also objected, that the contract declared on was void, because it undertook to indemnify the plaintiff from the consequences of his official misconduct. To this we reply ;—

1. It should have been left to the jury, whether the plaintiff was knowingly guilty of the misconduct. Bul. N. P. 146. 4 Bing. 66.

Hall v. Huntoon.

*Fletcher* v. *Harcourt,* cited 1 Chit. on Cont. 399. *Coventry* v. *Barton,* 17 Johns. 142. *Stone* v. *Hooker,* 9 Cow. 154. *Train* v. *Gold,* 5 Pick. 380. *Avery* v. *Holsey,* 14 Pick. 174.

2. The plaintiff had a right to take such an indemnity, when the illegal act was already past. *Fox* v. *Tilly,* 6 Mod. 225. *Hacket* v. *Tilly,* 11 Mod. 93. *Geivin* v. *Driggs,* 1 Caine 460, cited in *Doty* v. *Wilson,* 14 John. 378. *Kneeland* v. *Rogers,* 2 Hall 579, cited 1 Com. on Cont. 526, note 1.

*Foot & Everts* for defendant.

1. The evidence offered by the plaintiff did not sustain his declaration. The declaration alleges that the horse in question was purchased of the plaintiff, and that the agreement to indemnify was entered into with him. These allegations are not supported by proof that the horse was purchased of Jeffrey A. Barney. There was, then, a material variance between the contract declared upon, and the one offered to be proved. The consideration for the promise did not move from the plaintiff; neither was the promise made to him. 1 Ch. Pl. 273. 8 East 9. 2 Ib. 4. Dougl. 665. 15 Vt. 644.

2. Barney was not the agent of the plaintiff, but acted upon his sole responsibility. There was no offer to prove that he was the agent of plaintiff. The contract, when made, was of no validity to bind the plaintiff. The contract was not mutual, and the defendant was not bound. The plaintiff cannot avail himself of this agreement, inasmuch as he was a stranger to the consideration. 8 Mod. 116; Hardr. 321; 1 Vent. 6; 1 Str. 592; 1 Com. Dig. 309, note 1; 10 Wend. 156; 2 Wend. 158.

3. This indemnity was made to secure the office against his own illegal act, for a breach of his official duty. The person making the indemnity was a stranger to the transaction. It appears that the plaintiff and Barney knew at the time that the proceedings under the execution were illegal, but it does not appear that the defendant had such knowledge.

The opinion of the court was delivered by

WILLIAMS, Ch. J. The question, which has been urged on the

32

consideration of the court so learnedly and so ably by the counsel for the plaintiff, it appears to us does not arise in this case. The trial was by the court on the issue formed. The evidence is detailed. If any questions of fact were determined by the county court, this finding is not to be questioned here. The contract, on which the plaintiff relies, was made by the defendant, as agent of Finney, with Barney, from whom the consideration passed, and to whom the promise was made.

In the first place, it is a sufficient answer to the present action to say, that whatever promise was made by the defendant was made by him as the agent of Finney, and it is not found by the county court that the defendant either exceeded his authority, or concealed his agency; but the contrary is to be inferred from the judgment rendered; and the fact of his denying his agency on a particular occasion does not change his situation, when from the case itself it is stated that he was such agent.

In the second place, the declaration is not *calculated* to raise the question presented in the argument. The two special counts in the declaration are upon a sale by the plaintiff to the defendant, and a promise by the defendant to the plaintiff. The evidence tended to show only a sale by Barney, a promise to him, and that the plaintiff had no interest whatever in the property sold,—having, as it is stated, previously sold and parted with all his interest, and received and retained the price and consideration for which he had sold the same. This variance is fatal to any recovery on either of the special counts.

Nor could the plaintiff recover on the evidence on the general counts. We apprehend the rule is truly laid down by Judge Swift, in his digest, that, where "a promise is made to a *third* person for the benefit of the plaintiff, the declaration must state it to have been made according to the fact; as in the case of father and child;— when a promise is made to the former for the latter, the declaration must state the promise to have been made to the father, though the child bring the action." Swift's Dig. 690. The promise, in the case before us, may not have been void on the ground of illegality, inasmuch as a sheriff may take an indemnity for a *past* neglect. Yet, as the plaintiff passed no consideration to the defendant, if he

can be considered as having paid money at the request of any one, it must have been at the request of Barney, and not at the request of the plaintiff. For these reasons we think, that, under any view of the law on the subject of the parties to a contract, who may maintain an action on the same, the present action could not be supported on the facts which were in evidence.

Having this view of the present case, it would seem to be a work of supererogation to examine critically the question which has been so elaborately and ably argued. It is, however, due to the occasion to say, that we adhere to the rule which has been formerly expressed in the case of *Pangborn* v. *Saxton,* 11 Vt. 79, and in *Crampton* v. *Ballard,* 10 Vt. 251,—which latter case was again before the court at a subsequent term,—that the legal interest in a contract is in the person to whom the promise is made, and from whom the consideration passes; and consequently he is the person who must bring the action; and if there are any cases which seem to be at variance with this, they are to be considered as exceptions to the general rule; and a party, unless he bring himself strictly within the exception, must be governed by the general rule.

The case of *Dutton and wife* v. *Pool,* reported in 2 Lev. 210, 1 Ventr. 317, T. Raym. 302, has been considered as forming an exception to this rule, and probably for that reason TWISDEN, J., limits the rule adopted in that case to agreements made by parents on behalf of their children. It has always appeared to me, however, that the circumstances of that case warranted the decision, without impugning the general rule but in a slight degree. The transaction, out of which the case arose, was but four years after the passing of the statute of distributions, previous to which the administrator was entitled to the personal estate, and the bonds taken from him to make distribution were adjudged void. It was usual at that time, and indeed the only way, to provide for children, except the eldest son and heir, by settlement. The ancestor, Sir Edw. Pool, was about to make such a provision and settlement for his daughter, by cutting down the timber trees on his estate. The heir promised, in case he would forbear to cut down the trees, that he would pay the daughter £1000. The ancestor desisted, the estate, with the timber, descended to the heir, who was the defendant, and the

daughter, with her husband, who married after the promise, brought the suit. It was resisted by the heir on the ground that the action should have been brought by the executors of the father; but the objection was overruled and the action sustained, after many arguments. It is no where stated who was the executor; and perhaps it might have been the defendant.

It is apparent, that, unless the action could have been maintained as it was, the whole object of the contract would have been defeated. The money recovered would have gone into the mass of the estate, to be distributed, and the daughter would have been entitled to only a part of the provision intended for her equally with the defendant. That the court should have hesitated, before they came to that result, was to be expected, and is decisive that they considered the general rule not lightly to be departed from. It appears to me that the daughter, in that case, lost an interest in consequence of the promise of the defendant, and which she would have had, but for that promise, and that interest came to the defendant, and he had the benefit of it; and it did not require any very subtle reasoning, or a stretch of principle, to enable the plaintiff to recover. The consideration did not pass from her, when she lost her settlement; and the defendant, who received the same, might have been considered as making the promise directly to her.

In the case before us the contract was an entire contract, to wit, to pay fifteen dollars and indemnify, &c. Barney was therefore interested in the contract to the extent of the money to be paid. Barney did not stand in the situation of a parent, bound to provide for this plaintiff. And if relationship is to be taken into the account, in determining who has the legal, or even *beneficial* interest in a contract, this relationship cannot be extended beyond parent and child, or husband and wife. It surely cannot be contended that a contract for the benefit of remote relations, or friends, can be enforced by them, when the consideration does not proceed from them, and the person who advances the consideration is under no obligation to provide for, or advance, that relation and friend.

The plaintiff parted with nothing, and lost nothing, in consequence of the promise of the defendant, he having previously sold the horse to Barney and received the pay therefor. He does not

therefore bring himself within any of the exceptions, which have been engrafted on the rule, that the person, from whom the consideration proceeds, and to whom the promise is made, can alone maintain an action thereon. In every view, which we have been enabled to take of the case, the plaintiff is not entitled to recover, in this action, of the defendant.

The judgment of the county court is therefore affirmed.