## ALTHEA COLEMAN *v.* RALPH WHITNEY ET AL.

### *Mortgage. Life support. Limitation.*

1. In 1853 the oratrix separated from her husband, and her brother, in consideration of $400, then executed a mortgage to the husband conditioned to maintain and support her without further expense to him. *Held,* that she was entitled to the benefit of the mortgage, although not a nominal party to it.

2. From 1853 to 1864 the oratrix lived in the brother's family and worked for him. In 1864 she made a settlement with him, in which the $400 was included, and he gave her his note for $800 in payment of the balance due her. *Held,* that this transaction was not a bar to her rights under the mortgage, it not appearing that she received the note in discharge of the mortgage.

3. The premises were several times conveyed by the brother and his grantees by deeds of warranty, with the knowledge of the oratrix and without objection on her part. Before the bringing of this suit the brother died. *Held,* that she was not guilty of such *laches* as would defeat her right of recovery, it not being found that the defendants had lost their remedy against the brother's estate upon his warranty.

4. In case of a mortgage for life support, the mortgagee is not barred by failure to demand and receive such support for more than fifteen years.

Bill in chancery. Heard at the December Term, Orange County, 1888, upon the pleadings and a master's report. VEA-ZEY, Chancellor, dismissed the bill *pro forma.* The oratrix appeals.

The oratrix sought by this suit to charge certain premises with her support in virtue of a mortgage deed executed in 1853 by her brother, Eliphalet Coleman, to her then husband, Martin M. Benedict. The condition of the mortgage was as follows :

" This grant is intended as a security for the fulfilment and performance on the part of the said party of the first part, his heirs and assigns, of an agreement this day made between him and the said party of the second part, by which the said party of the first part agrees to and with the said party of the second part, to take the wife of the said party of the second part to the home of the said party of the first part, in Vermont, and to provide for, support and maintain her, separate from the said party

of the second part, and without cost or expense to the said party of the second part, and to indemnify and save harmless the said party of the second part for all claims for support, maintenance or otherwise from charge, through the wife of the said party of the second part, Althea Benedict, she being the sister of the said party of the first part, and for and during her natural life, and to save harmless the said party of the second part, his heirs and assigns, from all claims of dower or thirds by the said Althea, according to the condition of a certain bond or writing obligatory, bearing even date herewith, executed by the said Eliphalet Coleman to the said party of the second part, as a collateral security; which agreement, if duly kept and performed, will render this conveyance void. And if default shall be made in keeping or performing of the agreement above mentioned, then the party of the second part, and his assigns, are hereby authorized, pursuant to statute, to sell the premises above granted, or so much thereof as will be necessary to satisfy the amount or damage resulting therefrom, with the costs and expenses allowed by law, and to convey said premises to the purchaser or purchasers thereof, and to account to the said party of the first part for the overplus arising from such sale, if any should remain."

The defendants insisted that, if the oratrix ever had any claim against the said Eliphalet Coleman or against the premises in question, it was extinguished by a settlement between the oratrix and the said Eliphalet, on or about July 2, 1864. With reference to this settlement the master found:

" I further find that on the 2d day of July, 1864, the said oratrix procured the services of Judge Lynde of Williamstown to aid and assist her in a settlement with her brother, the said Eliphalet Coleman, and I find that they did settle, but it does not fully appear just what was settled.

" She had been living with and working for her brother, and making her home with him for about eleven years. Her son had lived with and worked for her brother more or less. She had received money from him to buy things for herself and for her son, but just how much all this was, or just what items went into the settlement, did not fully appear; but from all the circumstances and evidence, together with her acts and sayings afterwards, I find the fact that the settlement included all the balance due her at that time for her work and for the money

that had been received from the said Martin M. Benedict, by the said Eliphalet Coleman, at the time the said oratrix and the said Benedict agreed to live separate and apart.

"The amount found her due at the time of settlement, as reckoned up by Judge Lynde, was a little more than $800, and whatever sum there was over $800 the said Eliphalet paid her at the time, and then and there executed to her a promissory note for the said $800, in words and figures following:

"'WILLIAMSTOWN, July 2d, 1864.

'For value received I promise to pay Althea Coleman or bearer eight hundred dollars on demand and interest.

(Signed) ELIPHALET COLEMAN.'"

The remaining facts appear in the opinion.

*J. D. Denison*, for the oratrix.

The deed of Eliphalet Coleman could not affect the claim of the oratrix against these lands. *Blaisdell* v. *Stevens*, 16 Vt. 179; *Pownal* v. *Myers*, 16 Vt. 408.

*A. G. Fay*, for the defendants.

The oratrix was not a party to this mortgage nor was it for her benefit. It was merely given to secure the husband against future liability for her support. Hence she has no interest in it. 2 Jones Mort., s. 1371; Sch. H. & W., s. 473 *et seq.*; *Dupre, Trus.* v. *Rein*, 56 How. Pr. 228; *Barron* v. *Barron et al.*, 24 Vt. 375, 398 *et seq.*

At most the oratrix had only a lien on the premises to secure the payment of the $400. That was paid by the note given in the settlement of 1864, and her lien thereby extinguished. *Hutchins et al.* v. *Olcutt*, 4 Vt. 549; *Collamer* v. *Langdon et al.*, 29 Vt. 32; *Wait* v. *Brewster*, 31 Vt. 516.

She has been guilty of such *laches* in suffering, without objection, all these different conveyances, and in permitting her claim to slumber for twenty-eight years, that she cannot now assert it. Ang. Lim. 373 *et seq.*; also pp. 20, 21; *Bowman et al.* v. *Withen et al.*, 1 How. (U. S.) 189; *Phillips Judge* v. *Rogers et al.*, 12 Met. 405.

(9)

The opinion of the court was delivered by

MUNSON, J.    In 1853, the oratrix, while living with her husband, Martin M. Benedict, at Stockholm, N. Y., was taken sick and wrote to her brother, Eliphalet Coleman, who lived in Williamstown in this State, requesting him to come and help her. Coleman thereupon went to see the oratrix, and during his visit an arrangement was made as to the oratrix's future residence and support.    The oratrix and her husband agreed to thereafter live apart; the husband gave Coleman four hundred dollars, and Coleman executed to the husband a bond and mortgage, conditioned as set forth in the statement of facts.    Coleman then took the oratrix to his home in Williamstown, where she afterwards lived, except as hereinafter stated.    Coleman died in 1881, leaving no provision for her maintenance.    The oratrix is now without means and in need of support, and brings this bill to obtain a maintenance from the mortgaged premises.

The master reports the condition in the bond, which was not produced, to be as recited in the mortgage.    From this it appears that the mortgagor agreed to take the oratrix to his home, and to provide for, support and maintain her during her natural life, separate from and without expense to the husband, and to indemnify and save harmless the husband from any charges on her account.    It is claimed that this is simply an obligation to indemnify the husband, and that the wife takes no benefit under it.    We do not so construe the instrument.    We think the obligation assumed by Coleman included the support of the wife during her life, and was not limited to the mere indemnity of the husband.    He was not at liberty to leave her in destitution on the chance that her impoverished condition might not result in expense to the husband, but was to give her such necessary support as it would otherwise have been the duty of the husband to provide.    His undertaking was not merely to protect the husband from loss.    He undertook to support the wife, and to so fulfill that obligation as to save the husband harmless.    The consideration moved from the husband for the benefit of his wife as well as for his own security.    The mortgage taken by him

secures a provision directly beneficial to the oratrix. She can enforce that provision, although not a party to the instrument.

In 1854, the mortgage being then on record, Coleman conveyed the premises by warranty deed to one Glysson ; and through subsequent conveyances, mostly with covenants of warranty, the title has come to the defendant Electa Whitney. No recital of the mortgage was embraced in these conveyances. The successive owners have occupied the premises under their deeds, and have in no way recognized the right of the oratrix. The oratrix made no claim upon the premises prior to Coleman's death.

For several years after the oratrix went to live with Coleman she was able to work and was allowed wages for her services. A settlement of some kind was had between them in 1864, in which Coleman paid the oratrix some money and gave her his note for eight hundred dollars. The amount Coleman received from Benedict was included in this settlement. After this, Coleman made no payments to the oratrix except upon the note. The oratrix, however, still continued to live with him. But the report indicates that at some subsequent period she was living elsewhere. It is stated that after leaving the farm on which they had lived the oratrix supported herself from the payments made on the note. This means of support was not exhausted at the time of Coleman's death. Nothing appears from which it can be determined when any payment upon the note was made, nor when the oratrix ceased to live with her brother.

The defendants insist that the oratrix is barred from asserting her claim. They assume that the right to future support is lost by the mere failure to receive support during the period of limitation ; and contend that the oratrix received nothing prior to 1864 except compensation for her services, and nothing after that time except payments upon the note, and that the note represented only her earnings and the money received from Benedict. In maintaining this view no account is taken of the inference which may properly be drawn from the facts reported, that while living with Coleman subsequent to the settlement the

oratrix was receiving a part of her support as a member of his family. But the view of the court upon the question of limita- tion is such that it will not be necessary to have further facts as to the support of the oratrix ascertained, nor to consider what effect should be given to the payments made upon the note, nor the effect of a performance of the condition of the mortgage by Coleman upon the rights of his grantees.

We do not think the right to enforce an obligation for a life support is barred by the mere neglect for any length of time to take the benefit of the provision. A mortgage to secure sup- port during life is similar to one conditioned to secure the deliv- ery of articles within a certain extended period at such times as they may be called for. This mortgage is security that the ora- trix shall have her support when required, and the lapse of fif- teen years without receiving support, simply because she did not. ask it, would be no bar. She was not obliged to sit in idleness. and take her support when able to earn it, in order to save her right to support when sickness or failing strength should make it necessary. We think there was no breach of the condition of this mortgage until the application for support and the failure: to furnish it, subsequent to Coleman's death.

It is urged that the oratrix should be denied relief because of her neglect to assert her right until after Coleman's estate was substantially settled. It does not appear from anything dis- closed in regard to the settlement of Coleman's estate or the dis- position of his property, that the defendants have lost their rem- edy upon his warranty. It does appear that before Cole- man's death the defendant Electa, who now has the title, and who is the wife of the defendant Ralph, was told by the oratrix of her claim upon this land. The oratrix cannot be denied relief on the ground of *laches*.

It remains to consider what effect shall be given to the settle- ment of 1864. The oratrix had shortly before obtained a. divorce from her husband without alimony, and he had no fur- ther interest in the question of her support. The master reports that at the time the settlement was made nothing was said about

the future support of the oratrix or the mortgage given to secure it, and says further that it did not fully appear just what was settled. There is no finding that the settlement was in discharge of the oratrix's claim to future support. It does not necessarily follow from the fact that the four hundred dollars was included in the settlement, under the circumstances reported, that the oratrix accepted the note in satisfaction of her claim. Before a final disposition of the case it should clearly appear whether it was understood that by this settlement the oratrix released her claim for further support, and if not, whether it was understood that she was to discharge her security upon the land.

The statements of the bill are sufficient to entitle the oratrix to a foreclosure, and she should have leave to so amend her prayer as to ask for that specific relief.

*Decree reversed and cause remanded with mandate.*

Ross, J. dissents.

Ross, J., dissenting. I do not concur with my brethren with reference to the construction to be placed upon the condition of the deed set forth in the bill. The only parties to that deed and to the bond, to secure which the deed was given, are Eliphalet Coleman, the brother of the oratrix, and her then husband. She had been married to her husband about nine years, and was then about thirty-three years old. For some undisclosed reason she and her husband concluded to live separate and apart from each other, and concluded an agreement to that end. They were husband and wife and could not legally enter into a contract which would be binding upon them or others. Notwithstanding such a contract between them, the husband, so long as she remained his legal wife, was legally bound to support her, and she would take dower in his estate if he first deceased. She also had the right to pledge his credit for necessaries. Resting upon these legal obligations, rights and disabilities, the brother of the oratrix, Eliphalet Coleman, was called in and executed to the husband the bond and deed to secure the same. This was in 1853. The bond is lost, and we only know its terms from the condition of

the deed.   From that it appears that the brother agreed with
the husband, in consideration of four hundred dollars, paid by
the husband, to take the oratrix to his home and to provide for,
support and maintain her separate "from her husband," and
without cost or expense to "him," and to indemnify and save
"him harmless for all claims for support, maintenance or other-
wise from charge through the wife," * * for and during her
natural life, and to save harmless "the husband, his heirs and
assigns from all claim of dower or thirds" by the wife.   Every
contract is to be read with reference to the circumstances which
called it into existence.   Thus reading, I find nothing in it but
an obligation on the part of the brother of the oratrix to save
the husband from all charges for the support of his wife and
from all claim of dower or thirds, so long as he should legally
rest under these liabilities, notwithstanding they were to live sep-
arate, even if she should continue to be his wife to the end of
her life.   I find nothing in the circumstances under which it was
made, nothing in the language of the contract, as set forth in the
condition of the deed, to indicate that the brother was to sup-
port the oratrix in health and in sickness during her natural life.
If this were so we should expect that she would have been a
party to the bond and deed, and that therein she would have
transferred to her brother the obligation which she legally rested
under to labor for the husband.   But she is not made a party to
either the bond or deed, nor does she agree to perform the least
service for her brother.   It is incomprehensible to me that the
brother should have become, under the circumstances, obligated,
for the sum of four hundred dollars, without any agreement on
her part to labor or perform any service for him, to support her
during her natural life, whatever might befall her.   She also
then had a son, not more than seven or eight years old, to sup-
port.   It does not appear that either the husband or wife con-
templated a divorce when this contract was entered into.   It was,
therefore, natural and proper that the indemnity by the brother
should be for her natural life.   The only support which the
brother contracts to provide is such as shall be without cost or

expense to, and shall indemnify and save harmless,the husband from all costs and charges of that kind. Having come under this obligation to the husband, it was natural that the brother should retain the four hundred dollars received from the husband in trust for the oratrix, so long as the obligation existed. But if he had come under an obligation, not to indemnify the husband against charges for her support, but to support her during her natural life, the four hundred dollars received of the husband would have belonged to the brother absolutely. The oratrix and her brother acted upon the understanding that his obligation to her husband was only for the purpose of indemnifying him against her further support. As soon as she had obtained a divorce, in 1864, she called upon him to settle, not only for the services which she had rendered, but for the four hundred dollars which he had received when he gave the bond and deed to her husband, and he, without objection, settled with her for both claims. She then must have understood as he did, that his obligation to her husband was at an end. Thereafter he did not have left a cent of consideration for an agreement to support and maintain her for the rest of her life. With her knowledge and without objection, he dealt with the land covered by the deed given to her husband, not as though it was encumbered with her support for life, but, at most, as though the encumbrance was that the grantee in the deed, the husband, should not be charged with her support. Reading the contract set forth in the deed in the light of the circumstances which called it into existence, and in the light of the subsequent conduct of the oratrix and her brother, I find it a contract to indemnify the husband against subsequent charges for the support of the oratrix only. On this view there has been no breach of the condition of the deed. I would affirm the decree of the Court of Chancery, dismissing the bill.