## Gilbert Shaw and Polymers, Inc. v. E. I. DuPont de Nemours & Co.

[ 204 A.2d 159 ]

June Term, 1964

Present: Holden, C. J., Shangraw, Barney, Smith and Sylvester, JJ.

Opinion Filed October 6, 1964

*Conley & Foote* for both plaintiffs, with *Granville M. Pine* and *John A. Diaz* of the New York bar on the brief for plaintiff Shaw.

*Black and Plante* for the defendant, with *Raffaele M. Terino* on the brief, and *J. M. Castle, Jr.* of the District of Columbia Bar on oral argument.

**Holden, C. J.** This action in contract is based on a patent license agreement between the plaintiff Gilbert Shaw and the defendant. The licensing contract contained, among other things, a promise designed to protect the plaintiff Polymers, Inc. under a license previously issued to that corporation by the plaintiff Shaw. It is with this aspect of the defendant's undertaking that we are principally concerned.

The defendant challenged the plaintiffs' complaint in this respect contending that it fails to state a cause of action. The question was

raised in a motion to dismiss heard by the court before trial. In response to the motion, the trial court dismissed the complaint as to the plaintiff Shaw but retained the cause in behalf of Polymers, Inc. Shaw appealed from the order dismissing his complaint. In a cross-appeal under 12 V.S.A. §2386, the defendant has procured certification of the failure of the court to dismiss the action of Polymers.

The complaint alleges that the plaintiff Shaw is the sole owner of U. S. Patent No. 2,637,893 which expires May 12, 1970. Sometime prior to June 1955 Shaw granted a sole and exclusive license to the plaintiff Polymers to make, vend and sell under his patent, filaments having a cross-sectional dimension greater than 5 mils. This license was in full force and effect at the time the present action was instituted.

After the Polymers license was granted, Shaw issued a license to the defendant on June 25, 1955, authorizing that licensee to manufacture, use and sell filaments having a maximum cross-sectional dimension of less than 5 mils. The complaint tells us that this was a paid-up royalty-free license granted under the same patent as the Shaw license but for a smaller dimension. The protection for the benefit of Polymers was introduced by way of a promise on the part of the defendant that it would not make filaments of greater dimension than 5 mils. It is alleged that the plaintiff Shaw has performed all the conditions of this agreement but the defendant has violated its agreement by making and selling filaments under the patent which have a greater cross-sectional dimension than 5 mils, thus exceeding its license. Joining in a common complaint, the plaintiffs seek to recover damages arising from this alleged breach of the license agreement.

The narrow question presented by Shaw's appeal is his right as a promisee to participate in the present controversy. The defendant's promise was extended to this plaintiff alone. The consideration for the defendant's undertaking moved from Shaw to the defendant. As promisee his right to maintain this action has been firmly established in the common law. *Powers* v. *New England Fire Insurance Co.,* 69 Vt. 494, 495, 38 Atl. 148. His standing is not destroyed by the fact that Polymers, a stranger to the contract, may have such an interest that it will be entitled to the proceeds of any judgment which might be recovered. The beneficiary's interest can be protected in the final judgment both at law and in equity. And

there is sufficient protection for the promisor since satisfaction by him, in whole or in part, of his obligation to the promisee, will relieve him to that extent from subsequent payment to the beneficiary. *Powers v. New England Fire Insurance Co., supra,* 69 Vt. 496, 38 Atl. 148; 2 Williston, Contracts §392 (3rd Ed.). Shaw had adequate standing to enforce the defendant's undertaking. His complaint was erroneously dismissed.

 The error was not cured by concessions made at the time of hearing. At that time court and counsel correctly treated the defendant's motion to dismiss as in the nature of a demurrer. *Price* v. *Rowell,* 121 Vt. 393, 395, 159 A.2d 622; *Kaeser* v. *Town of Starksboro,* 116 Vt. 389, 391, 77 A.2d 831. On the motion presented, only the substance of the complaint can be considered. *State* v. *Verham News Corp.,* 121 Vt. 269, 272, 155 A.2d 872; *Theberge* v. *Canadian Pacific Railway Co.,* 119 Vt. 193, 197, 122 A.2d 848; *Duplis* v. *Fraternal Order of Eagles,* 118 Vt. 438, 439, 111 A.2d 727. This rule is not varied nor avoided by concessions of counsel made at the time of hearing. *Powell & Powell* v. *Greenleaf & Currier,* 103 Vt. 46, 48, 151 Atl. 508; *Howard National Bank* v. *Fidelity & Casualty Co.,* 96 Vt. 462, 468, 121 Atl. 24.

In any event, the concession which the defendant relies upon indicates only that Shaw conceded that his co-plaintiff was entitled to the proceeds recovered. This did not constitute a surrender of his interest in the action nor his right to maintain the suit for the benefit of his licensee or for himself as their interest might appear.

The question presented by the defendant's cross-appeal is limited to the right of Polymers, Inc. as a third party beneficiary to maintain this action in law. The defendant challenges Polymers' standing on the strength of the early common law rule that the legal interest in a contract is in him to whom the promise is made and from whom the consideration moves as enunciated in *Fugure* v. *Mutual Society of St. Joseph,* 46 Vt. 362, 369, decided in 1873. Under this doctrine only the promissee or his legal representative could maintain an action on a contract made for the benefit of a stranger. The want of privity was a fatal defect.

Since Judge Redfield's decision in *Fugure,* the right of the beneficiary to maintain an action on a contract made for his benefit has been expanded by judicial decision and legislation to the point where it is the prevailing rule in this country. See *Seaver* v. *Ransom,* 224

N.Y. 233, 120 N.E. 639, 2 A.L.R. 1187, 1189; 2 Williston, Contracts §368 (3rd Ed.) ; 2 Street, Foundation of Legal Liability, p. 152.

The trend in Vermont has followed the same pattern.. Here, as elsewhere, the denial of the right became so obviously unsatisfactory that we have strained to recognize exceptional circumstances to avoid the harshness of the common law rule. See, *Crampton* v. *Ballard*, 10 Vt. 251, 253; *Hall* v. *Huntoon*, 17 Vt. 244, 251; *Phelps Dodge & Co.* v. *Conant & Co.*, 30 Vt. 277, 284; *Coleman* v. *Whitney*, 62 Vt. 123, 127, 20 Atl. 322. *Hodges* v. *Phelps,* 65 Vt. 303, 308, 26 Atl. 625, *Standard Register Co.* v. *Greenberg*, 120 Vt. 112, 132 A.2d 174. In *Green* v. *McDonald*, 75 Vt. 93, 97, 53 Atl. 332, which the defendant cites with reliance, the court by way of dictum, gave lip service to the minority rule. At the same time, it reached out to adopt a discordant application of the doctrine of subrogation to preserve the beneficiary's right to relief. See 2 Williston, Contracts §368 (3rd Ed.) ; also, note on the Vermont rule, 81 A.L.R. 1278.

Professor Street in his treatise, History and Theory of English Contract Law, explains the origin of the rule: "The reason for the rule that none but those in privity with the consideration can maintain an action on the promise is found in the original conception underlying assumpsit. This remedy, as we have already seen, was founded on the notion of giving redress for damages incurred by the nonfulfilment of a deceitful promise. Only the person who suffered the detriment or damage in question could therefore bring suit upon breach of the promise. This rule was clearly a procedural one and was peculiar to the action of assumpsit. The statement of the rule that the stranger to the consideration cannot maintain assumpsit does not imply that the promisor owes no legal duty to the person for whose benefit the contract is made. Quite the contrary. The contractual duty exists, and unless we suffer ourselves to become entangled in a verbal quibble, we must admit that the duty is one owing to such third person. The remedy by the action of assumpsit, then, is not as broad as the limits of contractual liability. In other words, we are here confronted with one of those deficiencies in remedial law which are inevitable under the common law system of actions." Street, Foundations of Legal Liability, Vol. II, p. 155.

Ten years after this was written our first Practice Act was adopted in 1915. 1915 No. 90, §1. In its design to simplify procedure, this enactment manifested the legislative purpose "to establish a system

of procedure that would enable parties to get their rights settled in court on the merits without wading through a mass of legal technicalities." *Electric Service & Equipment Co.* v. *Estey Organ Co.*, 116 Vt. 435, 437 (Blackmer, J.), 77 A.2d 835. *Schlitz* v. *Lowell Mutual Fire Insurance Co.*, 96 Vt. 337, 341 (Slack, J.), 119 Atl. 513.

The Practice Act removed the common law classifications of particular actions in contract. These classifications were later combined so that now we have but one form of action at law. 12 V.S.A. §971 as amended by 1959, No. 261, §1.

The 1959 enactment reached further by providing: "All persons consenting thereto may join in one action as plaintiffs if they assert any rights to relief, jointly, severally, or in the alternative with the respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all of them will arise in the action . . . Judgment may be given for one or more of the plaintiffs according to their respective rights to relief, and against one or more defendants according to their respective liabilities." 12 V.S.A. §1071a (1959, No. 261, §31).

■ The origin of section 1071a is Rule 20(a) of the Federal Rules of Civil Procedure. In the federal domain it has found appropriate application to permit the joinder of the owner of a patent and his exclusive licensee as party plaintiffs. See *Smith* v. *Buckeye Incubator Co.*, 33 F. Supp. 71, 72; 2 Barron & Holtzoff, Federal Practice and Procedure § 532 (Rules Ed.). We conclude it has proper application to permit the plaintiffs to join in this controversy.

■ Whatever common law disability may have attended the effort of a stranger to the contract to assert his interest in an agreement made for his special benefit has been removed by these enactments. The common law rule recited in *Standard Register Co.* v. *Greenberg, supra,* 120 Vt. at 117, has been abrogated by statute. Accordingly, we hold that both of the present plaintiffs may assert their respective rights under the license agreement against the defendant as claimed in their joint complaint.

*Order dismissing the complaint of the plaintiff Gilbert Shaw is reversed. Denial of the defendant's motion to dismiss as to the plaintiff Polymers, Inc. is affirmed. Cause remanded.*