## Gilbert Shaw and Polymers, Inc. v. E. I. DuPont de Nemours and Company

[ 226 A.2d 903 ]

October and December Terms, 1966

Present: Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.

Opinion Filed December 6, 1966

Opinion on Rehearing Filed February 7, 1967

*Conley & Foote,* with *Granville M. Pine* of the New York Bar on the brief, for plaintiff.

*Black & Plante* and *Ernest H. Beck* of the Washington, D. C. Bar for defendant.

**Holden, C.J.** On May 12, 1953, the United States Patent Office issued a patent to the plaintiff Gilbert Shaw for his invention of an "Artificial Filament." The term of the patent is for seventeen years from the date of issue.

Shortly after the issuance of the patent, the plaintiff Shaw granted to the plaintiff Polymers, Inc., an exclusive license under the patent to manufacture filaments in excess of 5 mils cross-sectional dimension. They join in this action of contract which is founded on a subsequent license agreement between Shaw and the defendant. See *Shaw and Polymers, Inc.* v. *E. I. DuPont De Nemours and Co.,* 124 Vt. 304. We hereafter refer to the joint plaintiffs in the singular.

The license contract with the defendant was expressed in a letter from Shaw to E. I. DuPont De Nemours Company dated June 20, 1955:

"I (Shaw) am the owner of U.S. Patent 2,637,893, issued to me on May 12, 1953, entitled 'Artificial Filament' and I have the right to grant non-exclusive licenses thereunder.

"Effective as of the date of receipt from you (Du Pont) of Three Thousand Dollars ($3,000), I hereby grant you a paid-up, royalty-free license under U.S. Patent 2,637,893, and any reissue thereof, to make, use, and/or sell filaments having, in the drawn state, a maximum cross-sectional dimension of not more than 5 mils (.005 inches), such license to be irrevocable, to extend for the full term of said patent, or any reissue thereof, and to be non-assignable except to a successor to substantially the whole of your business relating to filaments as above defined."

After this agreement was concluded, the defendant manufactured a product known as Herox I-Beam filament with a cross-sectional dimension greater than the restriction specified in the license agreement. This action in contract ensued. The plaintiff claims a violation of the license agreement set forth in the letter of June 20, 1955.

The defendant DuPont's defense is based on two contentions. It disclaims its license imposed an agreement not to manufacture filaments in excess of five mils cross-sectional dimension. Secondly, it asserts that the product it manufactured is not within the scope of the plaintiff's patent. These questions have been thoroughly briefed and ably argued by both sides in the presentation of this appeal.

In overruling the defendant's motion for a directed verdict, the trial court held the defendant was bound by a negative covenant implied from the license agreement to the effect that it would not manufacture filaments in excess of the dimension specified. The correctness of this ruling presents the first question for review.

At the outset the defendant urges that there was no necessity for the trial court to invoke an implied covenant to protect the plaintiff. The defendant suggests the complainant should resort to the federal remedy for patent infringement, rather than an action at law for breach of the license agreement.

The adequacy of the federal infringement remedies available to the plaintiff is not the question before us. There is no challenge to the jurisdiction of the courts of the state to deal with the problem. The rights and remedies available under the patent law are not exclusive. He could elect to waive the patent infringement and rely on

the defendant's contractual undertaking in the license. *Henry* v. *A. B. Dick Co.*, 224 U.S. 1, 56 L.Ed. 645, 650. An attempt to hold a licensee to the obligation of his license of a copyright is "not subject to the criticism that it trenches the bounds of Federal jurisdiction." *Underhill* v. *Schenck,* 238 N.Y. 7, 143 N.E. 773, 33 A.L.R. 303, 307. (Cardozo, J.) We regard the present action subject to the same commentary.

No particular form of words is necessary to create a promise or a covenant. All that is essential is that from a fair interpretation of the language it shall appear that the alleged promisor has agreed to do, or refrain from doing, the act in question. 3 Williston, Contracts, §670 (Rev. Ed.) ; *Hale* v. *Finch,* 104 U.S. 261, 268, 26 L.Ed. 732.

An implied covenant of good faith and fair dealing prevails in every contract. The underlying principle is that there is an implied covenant that neither party shall do anything to injure or destroy the rights of the other party to receive the benefits of the agreement. *Kirke La Shelle Co.* v. *Armstrong Co.*, 263 N.Y. 82, 188 N.E. 163, 167; 3 Williston, Contracts, *supra,* §670 (Rev. Ed.).

The doctrine has application to license agreements in copyrights wherein the licensee impliedly promises not to do anything to violate the license or the copyrights upon which the license is granted. *Underhill* v. *Schenck, supra,* 33 A.L.R. at 307;. 3 Williston, Contracts, *supra,* §670. Following the principle adopted in Justice Holmes' opinion in. *Manners* v. *Mancuso,* 252 U.S. 317, 64 L.Ed. 590 and *Harper Bros.* v. *Klaw* (D.C.) 232 Fed. 609, 613, we think there is corollary application in a restricted license of patent rights to the effect that the licensee will not invade the ungranted part of the patent to the detriment of the estate reserved by the licensor.

The owner of a patent may grant licenses extending to all uses or he may restrict the use to a defined fixed area. *General Talking Picture Corporation* v. *Western Electric Co.,* 304 U.S. 175, 82 L.Ed. 1273, 1277; *Lanova Corporation* v. *Atlas, Imperial Diesel Engine Co.* (Del. Super .Co.), 55 A.2d 272, 274; 69 C.J.S. Patents §250.

The defendant relies heavily on the *Lanova* case. There the defendant, in a patent licensing agreement, relied on an implied negative

covenant to assert the defense that the limitation violated the Sherman and Clayton Acts—"said restriction not being based on a valid patent monopoly."

Here the plaintiff stands on what he claims to be a valid patent monopoly. Neither that issue nor the affirmative defense of illegality has been raised by the defense.

In sustaining the demurrer to the defense the court found no implied negative covenant offensive to the federal statutes. At the same time the court recognized that such an agreement is implied in many types of contracts where the very nature of the restriction implies such a covenant. That observation encompasses the question here.

The license granted by the plaintiff to the defendant restricts the defendant's manufacture, use and sale to "filaments having, in the drawn state, a maximum cross-sectional dimension of not more than 5 mils (.005 inches)—." It is clear from the language of the license that the plaintiff patentee reserved for himself, or his assignee, the property in the patent as to all filaments in excess of the dimension specified in the letter of June 20, 1955.

The implication that the defendant is not to exceed the limits of his license is not external to the license agreement. It is an inference which follows from the language of the parties and becomes as much a part of the contract as if it were spelled out in explicit terms. *Farmers Feed and Grain Co.* v. *Longway,* 103 Vt. 327, 329, 154 Atl. 674.

█ It is the implied assumption from the language that the defendant would not operate outside the limits of his license to the detriment of the patent rights reserved by the licensor. *Manners* v. *Mancuso, supra,* 64 L.Ed. at 594. We find no error in the trial court's denial of the defendant's motion for a directed verdict on the first point of the defense.

The second point presented in this appeal concerns two expired patents which the defendant sought to introduce in evidence. The earlier grant, referred to as the Dreyfus patent, was issued August 26, 1930. The Spencer invention was patented April 4, 1939. The trial court excluded the offer as being without probative value to the jury's consideration of the case.

The defendant's amended answer admits that it has made and sold filaments having a cross-sectional dimension of more than five mils. However, it alleges that the shape of these filaments, identified as Herox I-Beam, were known in the field prior to the date of the plaintiff's patent. It maintains its product, in excess of the dimension limited in the license, is in the public domain and outside the scope of the plaintiff's invention. The offer of the expired patents was designed to demonstrate that Herox practiced the prior art exhibited in the Dreyfus and Spencer patents.

■ The claims incorporated in the application for a patent define the invention and measure the rights granted to the patentee. *Graver Tank and Mfg. Co.* v. *Linde Air Products Co.,* 336 U.S. 271, 93 L.Ed. 672, 678; rehearing affirmed, 339 U.S. 605, 94 L.Ed. 1097.

The invention disclosed in the claim of the plaintiff's patent is— "A filament of substantially uniform cross-section throughout its length which is particularly adapted for use as a brush bristle, said filament being formed from a long chain linear oriented stable thermoplastic polymer, said cross-section comprising at least three flat, thin, erect webs radiating at about equal angles from each other from a small center portion having a cross-sectional dimension of about the order of the thickness of such webs, whereby a high degree of stiffness and a great amount of surface is obtained with a minimum of polymer."

The record reveals that an expert witness in the employ of the defendant testified that Herox filament is made of nylon and is constituted of a long chain linear oriented, stable thermoplastic polymer. In this composition the Herox polymer differs from the rubber fiber of the Spencer invention. And, according to the evidence, a rubber polymer is usually not oriented.

It appears that Herox does not compare with the Dreyfus invention, in that the filament described in this application is composed of cellulose. It was conceded at the time of the offer there was no evidence in the case that cellulose is a polymer within the description given in the plaintiff's claim of invention.

■■ It is well established that the claim of a patent is to be construed in the light of the prior art. This is so because the claims of a patent may be narrowed by reference to the prior art so as to restrict them to so much of the invention described by the specifica-

tions as is not exhibited by the prior art. *Westinghouse Electric and Manufacturing Co.* v. *Formica Insulation Co.,* 266 U.S. 342, 69 L.Ed. 322; *Scott Paper Co.* v. *Marcalus,* 326 U.S. 249, 90 L.Ed. 47.

If it can be said that Herox follows the shape patterns illustrated in the Dreyfus and Spencer patents, it departed from their inventions by its use of a filament "formed from a long chain oriented stable thermoplastic polymer." That composition is not exhibited in the expired patents of either the Dreyfus or Spencer filaments.

And the difference in the composition of the filaments, that were the subject of the Dreyfus and Spencer patents, made the offer irrelevant to Shaw's claim of invention to the use of the nylon in the configuration which it describes.

■ The defendant argues in its reply brief that materials are not patentable merely because they are novel. This contention challenges the validity of the patent itself. That question is not before us. As we have previously indicated, the issue of invalidity of the invention was not raised in the defendant's answer. A patent carries with it the presumption of validity and that presumption gives it substance and value. *Westinghouse Electric and Manufacturing Co.* v. *Formica Insulation Co., supra,* 226 U.S. at 348.

Although the trial court did not permit the jury to examine the Dreyfus and Spencer patents, the content of these documents was not ignored by the court itself. It is abundantly clear from the remarks of the presiding judge that he made a studied examination and careful comparison of the proposed exhibits before ruling on the offer.

The court construed the plaintiff's patent with reference to both the prior art and the defendant's alleged infringing product. This was distinctly the court's responsibility. *Mackay Radio and Telegraph Co.* v. *Radio Corporation of America,* 306 U.S. 694, 83 L.Ed. 506, 510.

The examination of the offer pursuaded the court at the trial of the present case that the scope of the plaintiff's patent was not sufficiently limited by the Dreyfus and Spencer inventions to render their patents proper for the jury's consideration.

Neither are we convinced that the offered evidence was necessary to the jury's understanding of the language of the invention claimed in Shaw's patent. To say that a patent must be construed in the light of the prior art within the light of the prior art within the holding of the *Scott Paper* case, *supra,* where the accused product was precise-

ly that of an expired patent, does not mean that the jury needs the technical language of the early patents to understand the shape described in the Shaw invention. This was not their function.

Unlike *Sinko Tools & Manufacturing Co.* v. *Casco Products Corporation,* 89 F.2d 916, 919, cited by both parties to different points, the licensee's right to have the prior art examined by the trial court was observed. The study of the exhibits tendered by the defendant persuaded the court that the patents were not comparable. In substance this was a ruling that the Shaw patent was not sufficiently limited by the expired inventions to justify the defense that the production of Herox was in the public domain or within the teaching of the earlier inventions.

 In conformity with the general rule, the construction of a patent to determine its scope and meaning presents a question of law for the court. *Coupe* v. *Royer,* 155 U.S. 565, 579; *Cold Metal Process Co.* v. *E. W. Bliss Co.,* 285 F.2d 231, 239, cert. den. 366 U.S. 961, 6 L.Ed. 235. The offer contained nothing for the jury to consider. *Market St. Railway Co.* v. *Rowley,* 155 U.S. 621, 39 L.Ed. 284, 287. We conclude that the trial court correctly excluded the offer.

*Judgment affirmed.*

## On Limited Reargument

Present: **Holden, C.J., Shangraw, Barney, Smith and Keyser, JJ.**

**Holden, C.J.** Within due time after the opinion in this appeal was announced, the defendant requested permission to reargue. Limited rehearing was ordered to allow reconsideration of the defendant's first assignment of error to the effect that there was no implication of a covenant in the license agreement to prevent the defendant from operating in the unlicensed area of the plaintiff's patent.

The defendant contends that the Court's reference to *Manners* v. *Morosco,* 252 U.S. 317, *Harper Bros.* v. *Klaw,* 232 Fed. 609 and *Underhill* v. *Schenck,* 238 N.Y. 7, 143 N.E. 773 was inappropriate. Since these decisions deal with copyright licensing agreements, rather than with patent licenses and these authorities were not briefed or argued in the first instance, further hearing was granted to enable

the Court to have the benefit of oral argument and written briefs submitted by the parties.

Upon reconsideration, we are not persuaded that the authorities referred to were inappropriate to the question reviewed. They reaffirm what inheres in a reasonable interpretation of the common understanding of the parties to a restrictive licensing agreement, such as the one presented here.

When permission is granted to operate in a restricted area, the acceptance of the privilege implies a condition that the area reserved will not be invaded. An English judge has observed—"This seems to be common sense and not to depend upon any patent law or any other particular law." *Incandescent Gas Light Co.* v. *Cantelo,* 12 Rep. Pat. Cas. 262, (Opinion by Mr. Justice Wills, quoted with approval in *Henry* v. *A. B. Dick Co.,* 224 U.S. 1, 56 L.Ed. 645, 661).

In the copyright cases cited, the restrictions were not as explicit as in the agreement here. It is plain from the text of the letter which enunciates the licensing agreement, quoted in the original opinion, that the license was offered with the express restriction against manufacture, sale or use of filament which exceeded the cross-sectional dimension of .005 mils. The defendant was at liberty to accept or reject the license, as thus restricted, according to its choice. When it elected to accept the license at the price indicated it became bound by the restriction which it imposed. See *Henry* v. *A. B. Dick Co., supra,* 56 L.Ed. at 650, 655; *Pope Mfg. Co.* v. *Owsley,* 27 Fed. 100, 104.

*Let the original order affirming the judgment be certified to the Addison County Court.*